Miller, J.
That the deceased, Henry Guyer, came to his death by reason of a blow inflicted by the defendant with a club or stick of wood is not questioned.
The defense insisted upon in the district court was, that the blow was struck by the defendant in reasonable self-defense when attacked by the deceased and his brother, George Guyer.
The evidence shows that the defendant, the deceased, and several other persons were at the house of one Oonrad Paul, on Sunday evening, November 21, 1869 ; that the defendant.arfd George Guyer quarrelled, and the deceased interferecq;.taking his brother’s side in the quarrel. Paul *324 protested against them quarrelling in the house, and requested them to desist or go out.
This seemed to quiet the parties for a time, when it was proposed by some one of the company that they would go home, and they all went out of the house apparently for that purpose. It was then -quite dark. When all were out of the house and a short distance therefrom, the quai> rel between the defendant, deceased and George Guyer, was renewed, and a fight with clubs ensued, in which the defendant struck the blow that caused the death of Henry Guyer. The witnesses are not agreed as to who made the first attack. There was evidence tending to show that the Guyers made the first attack, and that the fight was forced by them on defendant. The medical witnesses testified that the skull of the deceased was much thinner than an ordinary human skull, and that a lighter blow would produce the injury found in the skull of deceased than on an ordinary skull.
On the trial the defendant’s counsel requested the following instructions : “ If the jury believe that George Guyer and deceased made the first attack upon the defendant, armed with clubs, from which he had reason to, and did, believe that he was in imminent danger of great lodily Ticurm, it was lawful for him to resist such attack with a weapon of like character to that used by his assailants, and if in the use of such weapon, while exercising reasonable care to produce no greater injury than was necessary to protect himself from great ’bodihj injury, he unintentionally gave a blow which would in ordinary cases have been no more than was necessary to repel the assault made upon him, but which, by reason of the peculiar character of the skull of the deceased, or of the particular place where the blow happened to fall, did produce death, the defendant would not be guilty of the crime charged.”
“ If the jury believe that George Guyer and deceased, *325 acting in concert and with, the intention of inflicting great bodily injury upon defendant, made an attack upon him, armed with clubs, and struck him the first blow, and that they were in such close proximity to him at the time of such attack that he could not retreat without danger of great bodily harm, then he had the right to resist such attack with a weapon of the same character as those used by his assailants, and if, in using such weapon, while exercising reasonable care to apply no more force than was necessary to repel the attack upon him, he accidentally and unintentionally gave a blow to his assailant which produced death, such act would not be criminal and the jury should not for that reason convict.”
“If the jury believe that George Guyer and deceased, acting in concert and with the intention of inflicting great bodily harm upon defendant, attacked him with clubs, the defendant had the right to resist such attack with a weapon of like chai’acter, and if, in the necessary defense of his own person and without using any more force, or a more dangerous weapon than was being used against him, he inflicted a blow which he had reason to, and did, believe was necessary for his own protection, but which, unintentionally upon his part, produced death, such act would not be criminal and the jury should acquit.” £ »
The court refused each of these instructions, and gam the following, touching the right of self-defense. ™
“ If the jury believe from the evidence that the defendant, without solicitation and against his will, was attacked by the deceased with a deadly weapon, and the attack was such as to create a fear of death in the mind of a person of ordinary courage and prudence, and did create such an apprehension in the mind of the defendant, then he would be justified in using a similar weapon with prudence and caution in defending himself, and if you find from the evidence that in the exercise of such prudence and caution, and in reasonable fear of imminent danger to his own life, *326 the defendant took the life of the deceased, you must find the defendant not guilty.”
To the giving of this instruction, and in refusing those asked by the defendant, proper exceptions were taken.
There was error in these rulings of the court. By refusing the instructions asked by the defendant and giving the above, the court denied the defendant the benefit of the plea of self-defense if he took his assailant’s life to save himself from imminent danger of great bodily injury. The law gives a person the same right to use such force as may be reasonably necessary, under the circumstances by which he is surrounded, to protect himself from great bodily ha/rm, as it does to prevent his life being taken. He may excusably use this necessary force to save himself from any felonious assault. It was expressly so held by this court in the case of The State v. Benham, 23 Iowa, 154, 162. The same view is supported in the following eases: The State v. Thompson, 9 Iowa, 188; The State v. Decklotts, 19 id. 447; The State v. Neely, 20 id. 108; The State v. Kennedy, id. 569.
The judgment of the district court is reversed and a new trial ordered.
Reversed.