Robbins P. Dunn

*v.*

The People of the State of Illinois.

*Filed at Springfield March 26, 1884.*

1. Change of venue—*in criminal case—on the ground of prejudice on the part of the people of the county.* A petition for a change of venue in a criminal case was based on the alleged prejudice in the minds of the people of the county, caused by the publication in certain newspapers of prejudicial accounts of the alleged offence, such newspapers having a standing and large circulation in the county. The State's attorney filed a denial

of the statements in the petition, supported by counter affidavits, going to show that such prejudice did not exist from the publication of the articles, among which affidavits was that of the sheriff, to the effect that he talked about criminal cases with people from all parts of the county, and had found there was but comparatively little interest taken in the case, and that from his knowledge of the temper of the people of the county he had no hesitation in saying that the defendant could have his case tried as fairly and impartially in that county as in any one in the State. It was *held*, that this court was not prepared to say the circuit court, in denying the petition, had decided contrary to the right of the case.

2. CONTINUANCE—*absence of witnesses.* One ground for a continuance in a criminal case was the absence of witnesses; but it did not appear from the affidavit but that the same facts might be proved by other witnesses: *Held*, that this ground was not sufficient.

3. SAME—*want of time for attorney to prepare the defence.* An offence was alleged to have been committed on March 31, and the defendant was arrested on the same day, so that both he and his counsel were then informed of the nature and character of the offence with which the defendant was charged, and the indictment was not found until forty-seven days thereafter, and the trial was had twenty days later. It was apparent from the nature and character of the case, as shown by the record, that the defendant had ample time to prepare for trial. It was *held*, no error to refuse a continuance on the ground that defendant's counsel had been so occupied with other cases in the circuit and Appellate courts that he had not sufficient time and opportunity to prepare the case for trial.

4. CRIMINAL LAW—*insanity as a defence—as to the test of responsibility.* Where reason and judgment are not overcome, but the person charged with crime at the time retains the power to choose between right and wrong as to the particular act done, he can not escape responsibility for his acts under the plea of insanity.

5. So, if at the time a deadly assault is made, the person making the assault knew that it was wrong to commit such an act, and had the power of mind to choose either to do or not to do, and of controlling his conduct in accordance with such choice, he will be held amenable to the law, although he was not entirely and perfectly sane.

6. SAME—*reasonable doubt—defined.* A reasonable doubt, as used in instructions in criminal trials, is one arising from a candid and impartial investigation of all the evidence, and such as in the graver transactions of life would cause a reasonable and prudent man to hesitate and pause.

7. SAME—*of an instruction attempting to define a reasonable doubt.* On a trial of one for an assault with intent to murder, the court instructed the jury: "That the guilt of the defendant must be proved beyond a reasonable doubt, as used in the instructions in this case, means not a possible doubt, not a conjectural doubt, not an imaginary doubt, not a doubt of the

absolute certainty of the guilt of the accused, because everything relating to human affairs and depending upon moral evidence is open to conjectural or imaginary doubt, and because absolute certainty is not required by law. A reasonable doubt exists in that state of the case which, after considering and comparing all the evidence in the case, leaves the minds of the jury in that condition that they can not say that they feel an abiding conviction of the truth of the charge; but when the evidence in the case establishes the truth of the charge to a reasonable and moral certainty, that convinces the understanding and satisfies the reason and judgment of the jury of the truth of the charge, then, in law, there exists no reasonable doubt:" *Held,* that the instruction was more like an argument than a proposition of law; and was erroneous.

8. INSTRUCTION—*as to form of verdict in criminal case—as ignoring the right to find for a lesser offence—duty of defence to ask a counter instruction.* An instruction given for the People, on the trial of one for an assault with intent to murder, directing the jury as to the form of their verdict in case of conviction, was objected to as error, inasmuch as the direction to fix the term the defendant should serve in the penitentiary if found guilty, ignored the right of the jury to find him guilty of a lesser offence: *Held,* that while not concurring in such view, if it were correct it was the duty of counsel for the defendant to have asked an instruction that the jury might find a verdict for an assault with a deadly weapon, etc., and not having done so, they were in no position to complain.

9. SAME—*too many instructions.* On a trial upon an indictment for an assault with intent to murder, the court, for the defence, gave eleven instructions as asked, and twelve others after modifying them, and refused twenty-three. It was *held,* that the rules of law applicable to the case were simple and plain, and that the practice of incumbering the record with so many instructions was a vicious one, and it ought not to be encouraged.

10. SAME—*in the language of the statute.* On a criminal trial, an instruction following the language of the statute, which declares that drunkenness is no excuse for crime, is not erroneous.

11. NEW TRIAL—*verdict against the evidence—in criminal case.* Where one was convicted of an assault on his wife with intent to kill and murder her, and the proof was clear that the accused did shoot his wife, it was *held,* that the question whether the shooting was an accident, or was intentional, was a question of fact for the jury; and that when they have settled that fact adversely to the defendant, without passion or prejudice, in accordance with the evidence, it was not the province of this court to disturb the verdict.

12. EVIDENCE—*weight of defendant's testimony in criminal case, when testifying in his own behalf.* On the trial of one for an assault with intent to murder, the court instructed the jury that the credibility and weight to be given to the testimony of the defendant testifying in his own behalf, was a matter with the jury, and that in weighing the defendant's evidence they had

a right to take into consideration his manner of testifying, the reasonableness of his account of the transaction, and his interest in the result: *Held*, that there was no error in giving the instruction.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. THOMAS F. TIPTON, for the plaintiff in error:

A prisoner has the right to have a trial in a county where he can obtain a fair and impartial trial. *Weyrich's case*, 89 Ill. 90; *Brennan* v. *The People*, 15 id. 511.

It being the policy of the law that every man charged with crime should have a fair and impartial trial, a change of venue may be awarded by consent. *The People* v. *Scates*, 3 Scam. 351.

Nor can the party object to the jurisdiction of the court to which the cause may be sent on his petition. *Gardner* v. *The People*, 3 Scam. 84; *Weyrich's case*, 89 Ill. 90.

The petition in this case clearly brought the prisoner within the requirements of the statute. The rule is, that whenever a prisoner, by petition verified by affidavit, brings himself within the requirements of the statute, the obligation of the judge is imperative, and admits of the exercise of no discretion. *Clark* v. *The People*, 1 Scam. 117; *McGoon* v. *Little*, 2 Gilm. 42.

It is only when the material facts are disputed that the court can pass upon the facts, as alleged. This right of change of venue has been applied by this court to cases of *quo warranto*, (*The People* v. *Shaw*, 13 Ill. 581,) and is not a matter of discretion. *Ensminger* v. *The People*, 47 Ill. 384.

The case of *Baum* v. *The People*, 73 Ill. 259, was made under the statute of 1861, as was also *Perteet's case*, 65 Ill. 230, and *Rafferty's case*, 66 id. 118. By the revision of 1874, act approved March 24, 1874, in force July 1, 1874, which is now in force, there is no discretion if the facts set up in the petition are not denied, or if there are sufficient facts

that are undisputed to entitle the party to a change, and when the facts are contested the court must pass upon the same, and its findings are subject to review.

The prisoner was entitled to a continuance. *Conley* v. *The People*, 80 Ill. 236; *Wray* v. *The People*, 78 id. 212.

The second of the People's instructions was improper, in virtually telling the jury they might disregard the defendant's testimony. *Chambers* v. *The People*, 105 Ill. 409.

When the nature and essence of a crime are made by law to depend upon the peculiar state and condition of the criminal's mind at the time, and with reference to the act done, drunkenness, as a matter of fact, affecting the state and condition of the criminal's mind, is a proper subject for consideration and inquiry by the jury. The question in such case is, "What is the mental *status?*" *Swaim* v. *State*, 4 Humph. 136; *Lancaster* v. *State*, 2 Lea, 575; *Pirtee* v. *State*, 9 Humph. 663; *Huila* v. *State*, 11 id. 154; *The People* v. *King*, 27 Col. 507; *The People* v. *Eastman*, 14 N. Y. 562; *The People* v. *Harris*, 29 Col. 678; Mayne's Law of Crimes, sec. 22; *The People* v. *Hamill*, 2 Parker's Cr. Rep. 223; *State* v. *McCautz*, 1 Speer, 384; *Ferrell* v. *State*, 43 Texas, 503; *State* v. *Johnson*, 64 Conn. 130; *State* v. *Garvey*, 11 Minn. 154; *Moline* v. *State*, 49 Ga. 210; *State* v. *Bell*, 29 Iowa, 316; *Shannahan* v. *Commonwealth*, 8 Bush, 403; *Roberts* v. *The People*, 19 Mich. 401; *McIntyre* v. *The People*, 38 Ill. 521.

Mr. ROBERT B. PORTER, State's Attorney, for the People:

The proof very clearly shows that the shooting was not accidental, but intentional. The defendant's own testimony shows he was not insane, for he says: "I knew it was wrong to shoot." All the law books make legal responsibility to depend on the ability of the accused to distinguish right from wrong. Ray's Medical Jur. sec. 242; *Haskell's case*, Fish on Insanity, 83; *Freeman* v. *The People*, 4 Denio, 9; *Willis* v. *The People*, 32 N. Y. 715; Chitty's Medical Jur. 354; *Rex*

v. *Offord*, 5 C. & P. 168; *State* v. *Spencer*, 1 N. J. 196; *Commonwealth* v. *Rogers*, 7 Metc. 500; 1 Russell on Crimes, 8; *Commonwealth* v. *Mosler*, 4 Barr, 264.

Counsel, after reviewing and commenting upon the cases cited by plaintiff in error, contended that there was no error in refusing to grant a change of venue or a continuance.

The instruction as to a reasonable doubt was based on the celebrated cases of *Commonwealth* v. *Harman*, 4 Barr, 269, and *Commonwealth* v. *Webster*, 5 Cush. 320, and is abundantly sustained by the decisions of this court in *Kennedy* v. *The People*, 40 Ill. 488; *Earll* v. *The People*, 73 id. 329; *Smith* v. *The People*, 74 id. 144; *Miller* v. *The People*, 39 id. 457; *May* v. *The People*, 60 id. 119; *Connaghan* v. *The People*, 88 id. 468; *Pate* v. *The People*, 3 Gilm. 644; *Jackson* v. *The People*, 18 Ill. 270.

Mr. Justice Craig delivered the opinion of the Court:

This was an indictment in the circuit court of McLean county, against Robbins P. Dunn, for an assault on Phœbe Dunn, with intent to commit murder. Upon a trial before a jury the defendant was found guilty, and his term of imprisonment in the penitentiary was fixed at seven years. To reverse the judgment of the circuit court the defendant sued out this writ of error.

The first alleged error is the decision of the court overruling defendant's petition for a change of venue. The ground set up and mainly relied upon in the petition was, that certain newspapers published in Bloomington had published prejudicial accounts of the alleged assault, and as they had a standing and large circulation in the county, by reason of such publications the minds of the inhabitants of the county were prejudiced against the defendant. The State's attorney filed a denial of the allegations contained in the petition, and in support of the denial he also filed counter affidavits of

certain citizens who were well acquainted in the county, who state, in substance, that no prejudice exists in the county against the defendant. Among the affidavits filed was one made by the sheriff of the county, who states that he talks about criminal cases with people from all parts of the county, and finds that there is but comparatively little interest taken in what is called the "Dunn case," and from his knowledge of the temper of the people of the county he has no hesitation in saying that Dunn could have his case tried as fairly and impartially in McLean county as in any county in the State.

Section 22, of chapter 146, of the Revised Statutes of 1874, provides: "When the cause for the change of venue is the prejudice of the inhabitants of the county against the defendant, his petition shall set forth the facts on which he founds his belief, and the attorney on behalf of the People may deny the facts stated in the petition, and support his denial by counter affidavits, and the judge may grant or deny the petition, as shall appear to be according to the right of the case." Here there was no dispute in regard to the publication of the newspaper articles, but the question was, whether these articles had produced a prejudice in the minds of the inhabitants of the county against the defendant. If they had, he would be entitled to a change of venue; if they had not, then it was the duty of the judge to overrule the petition. The affidavits filed by the People in support of the denial of the allegations of the petition, upon which the circuit court rendered the decision, tended to show that there was no prejudice of the inhabitants of the county against the defendant, and we are not prepared to hold that the decision of the court was contrary to the right of the case.

The alleged offence was committed on March 31, 1883. The indictment against the defendant was returned into court on the 27th day of April, 1883. On the 17th day of May following, the defendant entered a motion for a continuance of the cause until the next term of court. The court overruled

41—109 ILL.

the motion, and the decision is relied upon as error.   One ground stated in the affidavit for a continuance is the absence of two witnesses, in the State of Pennsylvania; but it is not seriously contended that the affidavit was sufficient upon this point, as it does not appear from the affidavit but the same facts might be proven by other witnesses.   The main ground relied upon in the affidavit for a continuance was, that counsel for defendant had been so occupied with other cases in the circuit and Appellate courts that he had not sufficient time and opportunity to prepare the case for trial.   A defendant, as a general rule, should not be compelled to go to trial, after an indictment has been found, until he has had a reasonable time to prepare his case for trial; but in this case the alleged offence was committed on March 31, and the defendant was then arrested.   He and his counsel then knew the nature and character of the offence, and then knew as well what the defendant would be called upon to meet, as they did after the indictment was found.   Here was a period of forty-seven days from the time of arrest before the defendant was required to go to trial, and twenty days after indictment, in which he might prepare for trial, and from the nature and character of the case, as disclosed by the record, it is apparent that defendant had ample time to prepare for trial.

The court gave ten instructions on behalf of the People, and objection is made to all of them except the first, fourth and eighth.   The second instruction announced the well-known rule that the credibility and weight to be given to the testimony of the defendant was a matter for the jury, and in weighing the defendant's evidence they had the right to take into consideration his manner of testifying, the reasonableness of his account of the transaction, and his interest in the result.   The rule applied to the defendant may be adopted in regard to the testimony of any witness called to testify in a case, and no error is perceived in this charge to the jury. The third merely follows the language of the statute, which

declares that drunkenness is no excuse for crime,—and we held in *Fitzpatrick* v. *The People*, 98 Ill. 270, that such an instruction was not erroneous. The fifth, sixth and seventh were as follows:

"5.   If you believe, from the evidence, beyond a reasonable doubt, that at the time of committing the alleged act the defendant was able to distinguish right from wrong, then you can not acquit him on the ground of insanity.

"6.   If you believe, from the evidence, beyond a reasonable doubt, that the defendant committed the crime in manner and form as charged in the indictment, and at the time of committing such act was able to distinguish right from wrong, you should find him guilty.

"7.   If from all the evidence in the case you believe, beyond a reasonable doubt, that the defendant committed the crime of which he is accused, in manner and form as charged in the indictment, and that at the time of the commission of such crime the defendant knew that it was wrong to commit such crime, and was mentally capable of choosing either to do or not to do the act or acts constituting such crime, and of governing his conduct in accordance with such choice, then it is your duty, under the law, to find him guilty, even though you should believe, from the evidence, that at the time of the commission of the crime he was not entirely and perfectly sane, or that he was greatly excited or enraged, or under the influence of intoxicating liquor."

It is claimed that these instructions conflict with the law as declared by this court in *Hopps* v. *The People*, 31 Ill. 385, and *Chase* v. *The People*, 40 id. 353.   We do not so understand the instructions.   In the *Hopps case*, in discussing the question of insanity, it is said: "We have come to the conclusion that a safe and reasonable test in all such cases would be, that whenever it should appear from the evidence that at the time of doing the act charged, the prisoner was

not of sound mind, but affected with insanity, and such affection was the efficient cause of the act, and that he would not have done the act but for that affection, he ought to be acquitted. But this unsoundness of mind, or affection of insanity, must be of such a degree as to create an uncontrollable impulse to do the act charged, by overriding the reason and judgment, and obliterating the sense of right and wrong as to the particular act done, and depriving the accused of the power of choosing between them." Under this decision, where reason and judgment were not overcome, but the person retained the power to choose between right and wrong as to the particular act done, he could not escape responsibility for his acts under the plea of insanity. This, too, is the doctrine of the instructions, if we understand them correctly. Under the fifth and sixth, if defendant was able to distinguish between right and wrong he should be held liable. So, too, if at the time the crime was committed the defendant knew that it was wrong to commit such a crime, and had the power of mind to choose either to do or not to do the act, and of controlling his conduct in accordance with such choice, then he ought to be held responsible, although he was not entirely and perfectly sane. This, in substance, is the principle announced in the seventh instruction, and we regard it correct. Where a man knows that it is wrong to do a certain act, and possesses the power of mind to do or not to do the act, it would be a dangerous doctrine to hold that such person should not be held responsible because he might not be regarded entirely and perfectly sane.

Instruction No. 9, given for the People, is as follows:

"That the guilt of the defendant must be proved beyond a reasonable doubt, as used in the instructions in this case, means, not a possible doubt, not a conjectural doubt, not an imaginary doubt, not a doubt of the absolute certainty of the guilt of the accused, because everything relating to human

affairs, and depending upon moral evidence, is open to conjectural or imaginary doubt, and because absolute certainty is not required by law. A reasonable doubt exists in that state of the case which, after considering and comparing all the evidence in the case, leaves the minds of the jury in that condition that they can not say they feel an abiding conviction of the truth of the charge; but where the evidence in the case establishes the truth of the charge to a reasonable and moral certainty, that convinces the understanding and satisfies the reason and judgment of the jury of the truth of the charge, then, in law, there exists no reasonable doubt."

This court has had occasion, in a number of cases, to determine the scope and meaning of the term "reasonable doubt," and it has been uniformly held that a reasonable doubt is one arising from a candid and impartial investigation of all the evidence, and such as, in the graver transactions of life, would cause a reasonable and prudent man to hesitate and pause. (*May* v. *The People,* 60 Ill. 119; *Miller* v. *The People,* 39 id. 457; *Connaghan* v. *The People,* 88 id. 460.) In a number of cases in this court an instruction given for the People, containing the above proposition, has been sustained; but we are aware of no case where an instruction like the one given in this case has been sustained by this court. The instruction is not a proposition of law, but it is more in the nature of an argument than anything we can liken it to, and in a case where the testimony is conflicting, or such as to leave the minds of the jury in doubt, it would be likely to prejudice the jury. While we do not hesitate to condemn the instruction, still we do not think it did any harm in this case, for the reason that the evidence did not leave the guilt of the defendant in doubt. The guilt of the defendant was so clear and palpable, from the evidence, that no question of doubt could arise, and while the instruction was erroneous, the error could work no injury in the case.

The tenth and last instruction given for the People, merely directs the jury as to the form of the verdict. But it is said that the direction to fix the term defendant should serve in the penitentiary if found guilty, ignored their right to find the defendant guilty of the lesser offence, and hence was erroneous. We do not concur in this view, but if counsel for defendant are correct, it was for them to prepare an instruction informing the jury that they should bring in a verdict of guilty, only, if they find, from the evidence, that the defendant was guilty of the lesser offence,—an assault with a deadly weapon; and as they did not ask for an instruction of that character, they are in no position to complain.

The court gave to the jury, on behalf of the defendant, eleven instructions as asked, twelve others were modified by the court, and given as modified, and twenty-three were refused. It would be extending this opinion to a greater length than we have the time to do, should we undertake to review the decision of the court on the thirty-five refused and modified instructions, and it would serve no useful purpose to do so. We are satisfied, after a careful examination of the record, that the jury was fully and fairly instructed in regard to the law involved in the case, and if it be true that some of the refused instructions contain correct propositions of law, no harm was done in refusing them. The rules of law applicable to a case of this character are simple and plain, and the practice of incumbering the record with so many useless instructions is a vicious one, and it ought not to be encouraged.

It is also claimed that the verdict of the jury is against the evidence. There is no controversy in regard to the fact that the defendant shot his former wife. He claims that the revolver which he had in his possession was discharged by accident, while engaged in a scuffle with his son. In this, however, he is contradicted by his wife and several members of his family, who were present at the time the shooting was

done. Whether the shooting was an accident, for which the defendant should not be held responsible, or whether it was done intentionally, was a question of fact, purely for the determination of the jury; and when they have settled that question without passion or prejudice, in accordance with the evidence, it is not the province of this court to disturb the verdict of the jury.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*