## JAMES T. WILLIS v. STATE OF NEBRASKA.

FILED DECEMBER 5, 1894.   No. 7155.

1. **Criminal Law:** PROOF OF CONFESSION: CROSS-EXAMINATION
OF WITNESS. In the trial of a criminal case, when the state
calls a witness for the purpose of proving a confession made by
the prisoner, before the witness is allowed to detail such infor-
mation, it is the privilege of defendant's counsel to cross-
examine the witness as to the circumstances under which the
confession proposed to be detailed was made.

2. ——: ——: ——. In such case, if the defendant's counsel
neglect to cross-examine the witness before he answers, and the
answer is responsive to the inquiry, error cannot be predicated
on the refusal of the trial court to strike out the answer of the
witness.

3. ——: WITNESSES: PROOF OF INTOXICATION. In the trial of a
criminal case it is competent for the state in rebuttal to show
that a witness who testified for the defendant was intoxicated at
the time of the happening of the events about which such witness
has testified. *Hill v. State*, 42 Neb., 503, reaffirmed.

4. **Murder:** REASONABLE DOUBT: INSTRUCTION. In a murder
trial the court instructed the jury : "A doubt to justify an ac-
quittal must be reasonable, and it must arise from a candid and
impartial investigation of all the evidence in the case; and un-
less it is such that were the same kind of doubt interposed in
the graver transactions of life it would cause a reasonable and
prudent man to hesitate and pause, it is insufficient to authorize
a verdict of not guilty." *Held*, That the instruction was cor-
rect. *Polin v. State*, 14 Neb., 540, reaffirmed.

5. ——: ——: ——. In a murder trial the court instructed
the jury: "The court further instructs the jury, as a matter of
law, that the doubt which the juror is allowed to retain on his
own mind, and under which he should frame his verdict of not
guilty, must always be a reasonable one. A doubt produced by
undue sensibility in the mind of any juror in view of the con-
sequences of his verdict is not a reasonable doubt, and a juror
is not allowed to create sources or materials of doubt by resort-
ing to trivial or fanciful suppositions and remote conjectures as
to possible states of facts differing from that established from the
evidence. You are not at liberty to disbelieve as jurors, if from

Willis v. State.

the evidence you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered. The jury are instructed that if, after a careful and impartial consideration of all the evidence in the case, they can say they feel an abiding conviction of the guilt of the defendant, and are fully satisfied to a moral certainty of the truth of the charge made against him, then the jury are satisfied beyond a reasonable doubt." *Held*, That the instruction was correct in every respect.

6. ———: INSTRUCTION: MALICE. In such trial the court instructed the jury: "If one with deliberation and premeditation uses a deadly weapon  *  *  *  and shoots another intentionally, and such other,  *  *  *  in consequence thereof, dies, the person thus shooting is held responsible for the death, and if the killing is neither justifiable nor excusable in law, is liable to be punished for murder in the first degree." *Held*, That the instruction was erroneous, as the element of malice was omitted therefrom, but that the giving of it was not prejudicial to the plaintiff in error, as the court in other instructions had charged that in order for the killing of the deceased to be murder in the first degree that the plaintiff in error must have killed him purposely and of deliberate and premeditated malice.

7. Homicide: SELF-DEFENSE: INSTRUCTION. Willis was tried for murder in the first degree for the killing of Bates. His defense was self-defense. The evidence tended to show that Bates had repeatedly made threats against Willis, and that these threats had been communicated to the latter; that at the time of the homicide Bates was in the saloon of Willis; that a quarrel arose between them, and Willis ordered Bates to leave the saloon; that Bates declined to do this, but took off his coat and walked up in front of the bar behind which Willis was standing and said, "I can do you," at the same time putting his hand behind him or into his hip pocket, at which moment Willis shot him. The court charged the jury : "To justify the taking of life in self-defense it must appear from the evidence that the defendant not only really and in good faith endeavored to decline any further trouble, and to escape from his assailant before the fatal shot was fired, but it must also appear that the circumstances were such as to excite the fears of a reasonable person that the deceased intended to take his life or do him great bodily harm, and also that the defendant really acted under the influence of these fears and not in a spirit of revenge." *Held*, Erroneous, because (1) if Willis, at the time Bates approached him, honestly believed, as a reasonable human being,

that Bates was about to take his life or to do him serious bodily harm, the law did not require him to fly; (2) he had a right to stand his ground and make such defense as he honestly believed, as a reasonable human being, was absolutely necessary to protect himself from death or serious injury; (3) that the common law rule—to justify a party assaulted in taking the life of his assailant he must "retreat to the wall"—was not applicable to the facts in this case; (4) nature has endowed all living beings with the love of life and the instinct of self-preservation. Man is no exception to this law; and when he is unlawfully attacked and the circumstances surrounding him fix in his mind a sincere conviction that his life is endangered or his body in imminent peril, he may lawfully do that thing which in his judgment, as a reasonable human being, he honestly deems absolutely necessary to protect his life or save his body from serious injury. *Parrish v. State*, 14 Neb., 60, distinguished.

8. Criminal Law: MOTION TO QUASH VERDICT. Filing a motion to quash a verdict more than three days after its rendition is equivalent to amending a motion for a new trial at that time, which cannot be done.

9. Murder: INFORMATION. The information charging plaintiff in error with the crime of murder in the first degree and on which he was tried, set out in the opinion and in all things approved.

ERROR to the district court for Dakota county. Tried below before NORRIS, J.

Statements of facts and proceedings appear in the opinion of the commissioner.

*Jay & Beck* and *W. P. Warner*, for plaintiff in error:

The fourteenth instruction, given by the court on its own motion, was erroneous. (*Leonard v. Territory*, 7 Pac. Rep. [Wash.], 873; *Commonwealth v. Miller*, 139 Pa. St., 77.)

The court erred in giving the fifteenth instruction on its own motion. It is erroneous to give an instruction which is more in the nature of an argument than a statement of the law. (*Dunn v. People*, 109 Ill., 635; *Ludwig v. Sager*, 84 Ill., 99; *State v. Orr*, 64 Mo., 339; *Morris v. Lachman*, 8 Pac. Rep. [Cal.], 799.)

The sixteenth instruction was erroneous in omitting the question of malice. (*People v. Sweeney*, 55 Mich., 586; *McClaine v. Territory*, 25 Pac. Rep. [Wash.], 453.)

The seventeenth instruction was not a correct statement of the law. (*Long v. State*, 23 Neb., 34.)

The eighteenth instruction, given by the court on its motion, was erroneous. (*Brinkley v. State*, 8 So. Rep. [Ala.], 22; *Jones v. State*, 76 Ala., 8; *Cary v. State*, 76 Ala., 78; *Perkins v. State*, 47 N. W. Rep. [Wis.], 827; *Pond v. People*, 8 Mich., 150; *Burgess v. Territory*, 19 Pac. Rep. [Mo.], 558; *Stoneham v. Commonwealth*, 10 S. E. Rep. [Va.], 238; *Erwin v. State*, 29 O. St., 186; *State v. Evans*, 10 S. E. Rep. [W. Va.], 792; *United States v. Wiltberger*, 3 Wash. [U. S.], 515; *Vollmer v. State*, 24 Neb., 838; *Runyan v. State*, 57 Ind., 84; *People v. Hull*, 49 N. W. Rep. [Mich.], 288; *People v. Kuehn*, 53 N. W. Rep. [Mich.], 721; *Hurd v. People*, 25 Mich., 405; *People v. Lilly*, 38 Mich., 270; *People v. Lennon*, 71 Mich., 298; *Jones v. State*, 17 Tex. App., 602; *Bell v. State*, 20 Tex. App., 445; *Spearman v. State*, 23 Tex. App., 224; *Brumley v. State*, 21 Tex. App., 222; *Patillo v. State*, 3 S.W. Rep. [Tex.], 766; *Horbach v. State*, 43 Tex., 242.)

Instructions twenty and twenty-one, given by the court on its own motion, were erroneous. (*Lang v. State*, 1 S. W. Rep. [Tenn.], 319; *State v. Banks*, 73 Mo., 592.)

The verdict was a privy verdict, and void, and should not have been received by the judge. (*Young v. Seymour*, 4 Neb., 86; *Longfellow v. State*, 10 Neb., 105; *Hobart v. Hobart*, 45 Ia., 503; *Wightman v. Karsner*, 20 Ala., 446; *Brumley v. State*, 20 Ark., 77.)

The motion filed by plaintiff in error in arrest of judgment should have been sustained. (*Schaffer v. State*, 22 Neb., 557; *Fouts v. State*, 8 O. St., 98; *Robbins v. State*, 8 O. St., 131; *Kain v. State*, 8 O. St., 306; *Hagan v. State*, 10 O. St., 459; *State v. Brown*, 21 Kan., 38; *Leonard v. Territory*, 7 Pac. Rep. [Wash.], 872; *State v. McCormick*, 27 Ia., 402.)

*George H. Hastings, Attorney General,* for the state:

The motion to strike out the testimony of the witness Schmied was properly overruled. (*Anderson v. State,* 25 Neb., 550; *Clough v. State,* 7 Neb., 322.)

The fourteenth paragraph of the instructions given by the court upon its own motion was a correct statement of the law pertaining to reasonable doubt. (*Miller v. People,* 39 Ill., 457; *Commonwealth v. Webster,* 5 Cush. [Mass.], 295; *State v. Ostrander,* 18 Ia., 458; *Arnold v. State,* 23 Ind., 170; *May v. People,* 60 Ill., 119.)

The fifteenth instruction is sustained by *St. Louis v. State,* 8 Neb., 416.

The sixteenth instruction correctly stated the law of the subject to which it pertained. (*Preuit v. People,* 5 Neb., 384; *State v. Turner,* Wright [O.], 20; *Hill v. Commonwealth,* 2 Gratt. [Va.], 595.)

The seventeenth instruction was without error. (*Bartling v. Behrends,* 20 Neb., 215; *Campbell v. Holland,* 22 Neb., 607.)

The following cases are cited to sustain the eighteenth instruction: *Parrish v. State,* 14 Neb., 67; *Harrison v. Harrison,* 43 Vt., 417; *State v. Sloan,* 47 Mo., 604; *State v. Collins,* 32 Ia., 36; *State v. Goodrich,* 19 Vt., 116; *Commonwealth v. Crawford,* 8 Phila. [Pa.], 490; *State v. Wood,* 53 Vt., 560; *Kendall v. State,* 8 Tex. App., 569; *State v. Dixon,* 75 N. Car., 275; *Presser v. State,* 77 Ind., 274; *People v. Coughlin,* 65 Mich., 704; *State v. Matthews,* 78 N. Car., 523; *Duncan v. State,* 49 Ark., 543; *Runyan v. State,* 57 Ind., 80; *People v. Gonzales,* 71 Cal., 569; *Fortenberry v. State,* 55 Miss., 403; *Steinmeyer v. People,* 95 Ill., 383; *State v. Parker,* 96 Mo., 382; *State v. Donnelly,* 69 Ia., 705; *Panton v. People,* 114 Ill., 505; *State v. Partlow,* 90 Mo., 608; *Gallagher v. State,* 3 Minn., 185; *People v. Williams,* 32 Cal., 280; *People v. Campbell,* 30 Cal., 312; *Stewart v. State,* 1 O. St., 66; *People v. Ander-*

*son*, 44 Cal., 65; *State v. Quin*, 3 Brev. [S. Car.], 515; *People v. Doe*, 1 Mich., 451; *Patten v. People*, 18 Mich., 314; *Cotton v. State*, 31 Miss., 504; *Oliver v. State*, 17 Ala., 587; *Dupree v. State*, 33 Ala., 380; *State v. Benham*, 23 Ia., 154; *State v. Burke*, 30 Ia., 331; *Noles v. State*, 26 Ala., 31; *Dill v. State*, 25 Ala., 15.

The nineteenth instruction is not erroneous. (*Vollmer v. State*, 24 Neb., 844; *Panton v. People*, 5 Am. Crim. Rep. [Ill.], 425, note, and cases; *Barnards v. State*, 88 Tenn., 229; *White v. Territory*, 3 Wash. Ter., 397.)

Words and epithets, however irritating they may be, are no excuse for making a felonious assault. (Wharton, Homicide, sec. 393, and cases.)

If a party to the cause have knowledge of any circumstances tending to disqualify certain jurors from serving in a particular case, he cannot hold back these facts until after the rendition of a verdict, and then produce them in support of a motion for a new trial. (*Tomer v. Densmore*, 8 Neb., 384; *Palmer v. People*, 4 Neb., 75; Thompson & Merriam, Juries, sec. 275.)

The information was sufficient. (*Fonte v. State*, 8 O. St., 98; *Shaffer v. State*, 22 Neb., 557.)

*J. J. McAllister*, also for the state.

RAGAN, C.

James T. Willis in the district court of Dakota county was found guilty by a jury of the crime of manslaughter for the killing of one Amberry Bates, and he brings the judgment pronounced against him on such finding here for review, assigning the following errors:

1. That the court erred in overruling plaintiff in error's motion to strike out the testimony of one Schmied, a witness who testified on the trial of the case on behalf of the state. Schmied, without any objection on the part of plaintiff in error, had testified that he resided in Dakota

City, where the killing of Bates occurred; that he was engaged in the publishing of a newspaper at that place, and acquainted with the plaintiff in error and had been for some years; that on the day of the killing of Bates, and very soon thereafter, he went to the saloon of the plaintiff in error, where Bates was killed, and there had a conversation with the plaintiff in error in reference to the homicide. He then testified that on the same evening between 7 and 8 o'clock, in the sheriff's office, he had another conversation with the plaintiff in error, and thereupon he was asked by counsel for the state this question: "Q. What, if anything, did Mr. Willis say in that conversation? A. Why, we were down there, and I says, 'Would you like to make a statement for publication,' and he says 'No.' 'Well,' I says, 'I didn't know but what maybe you wanted to state the facts.' I says, 'It would be better to give the facts than the rumored report any time.'" Counsel for plaintiff in error then moved the court to strike out the above testimony, for the reason that the expression used by the witness, "It would be better to give the facts than the rumored report any time," was an inducement held out to the plaintiff in error to make a statement. No objection was made to the question propounded to Schmied, nor did counsel cross-examine nor seek to cross-examine him before he answered, as to whether any threats were made or inducements held out to induce the plaintiff in error to make the statement he did. In the trial of a criminal case, where the state calls a witness for the purpose of proving a confession made by the prisoner, before the witness is allowed to detail such information it is the privilege of defendant's counsel—and the better practice—to cross-examine the witness as to the circumstances under which the confession proposed to be detailed was made. Counsel cannot wait until the witness has answered and then move to strike the statement from the record, if the answer is responsive to the inquiry. The assignment of error, however, is

Willis v. State.

without merit, for the reason that the witness in the testimony which it was moved to strike out made no statement of any confession made to him by the plaintiff in error as to whether he committed the crime with which he was charged. He declined to make a statement, saying that he would tell his story before a coroner's jury.

2. That the court erred in overruling objections made by plaintiff in error to the evidence of one Rathbun. One Brown was a witness for the state, and testified that he was present at the homicide; saw Willis shoot Bates, and that after he had shot him and he fell Willis walked up to where Bates was lying and shot him again. One Endersby was called as a witness for Willis and testified that he was present at the homicide and also testified that said Brown was not present. On rebuttal the state called the witness Rathbun, and he testified that he saw the witness Endersby within five minutes after the shooting of Bates occurred. He was then asked by the state this question: "Did you notice his condition as to whether he was intoxicated or not?" To this the counsel for plaintiff in error objected, on the ground that the evidence was incompetent, irrelevant, immaterial, and not rebuttal. The objection was overruled and the plaintiff in error excepted. In *Hill v. State*, 42 Neb., 503, Hill was being tried for murder and called a witness who testified in his behalf. The state, on cross-examination of this witness, asked him if he had not been arrested for vagrancy, drunkenness, and other misdemeanors. Hill took an exception to this, and assigned the action of the court in permitting this witness to be thus cross-examined as error. This court, speaking through POST, J., said: "The limits within which cross-examination will be allowed respecting the past life of a witness other than the defendant in a criminal prosecution, for the purpose of affecting his credibility, rests in the discretion of the trial court." The evidence offered, and the admission of which is assigned as error here, was competent, material,

and relevant, and, following the rule of *Hill v. State, supra,* it would have been competent for the state, by cross-examination of Endersby himself, for the purpose of affecting his credibility as a witness, to show that he was intoxicated at the time of the killing of Bates; and we know of no rule of law that prevented the state from showing that fact by any competent evidence on rebuttal. The jury was entitled to know whether Endersby heard and understood the matters and things about which he testified as a sober man of ordinary intelligence, or whether his sight, hearing, and understanding, or either or any of them, were at the time affected by intoxicants.

3. That the court erred in giving to the jury on its own motion instruction No. 14, as follows: "The rule of law which clothes every person accused of crime with the presumption of innocence, and imposes upon the state the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid any one who is in fact guilty of crime to escape, but is a humane provision of law, intended, so far as human agencies can, to guard against the danger of any innocent person being unjustly punished. A doubt to justify an acquittal must be reasonable, and it must arise from a candid and impartial investigation of all the evidence in the case; and unless it is such that were the same kind of doubt interposed in the graver transactions of life it would cause a reasonable and prudent man to hesitate and pause, it is insufficient to authorize a verdict of not guilty. If, after considering all the evidence, you can say you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt." The criticism on this instruction is the language, "and unless it is such that were the same kind of doubt interposed in the graver transactions of life it would cause a reasonable and prudent man to hesitate and pause, it is insufficient to authorize a verdict of not guilty." In *Polin v. State,* 14 Neb., 540, Polin was prosecuted for murder. The district

court instructed the jury: "The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the judgment and understanding of ordinarily prudent men with a conviction on which they would act in their most important concerns or affairs in life;" and this court held the instruction to be correct. In *May v. People*, 60 Ill., 119, a reasonable doubt was defined as follows: "A reasonable doubt, beyond which the jury should be satisfied in a criminal case before finding the accused guilty, is one arising from a candid and impartial investigation of all the evidence, and such as in the graver transactions of life would cause a reasonable and prudent man to hesitate and pause." (See, also, *Dunn v. People*, 109 Ill., 635.) The instruction assailed was correct.

4. That the court erred in giving on its own motion instruction No. 15, as follows: "The court further instructs the jury, as a matter of law, that the doubt which the juror is allowed to retain on his own mind, and under which he should frame his verdict of not guilty, must always be a reasonable one. A doubt produced by undue sensibility in the mind of any juror in view of the consequences of his verdict is not a reasonable doubt, and a juror is not allowed to create sources or materials of doubt by resorting to trivial or fanciful suppositions and remote conjectures as to possible states of facts differing from that established by the evidence. You are not at liberty to disbelieve as jurors, if from the evidence you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered. The jury are instructed that if after a careful and impartial consideration of all the evidence in the case they can say they feel an abiding conviction of the guilt of the defendant, and are fully satisfied to a moral certainty of the truth of the charge made against him, then the jury are satisfied beyond a reasonable doubt." The objections made to this instruction are, first, that it does not properly define a rea-

sonable doubt. In *St. Louis v. State*, 8 Neb., 416, St. Louis was on trial for murder, and the district court instructed the jury : "Absolute, unequivocal, positive certainty is not required in any case. Mere speculation or contingent doubt may be found in connection with almost all human affairs. Absolute, unequivocal, mathematical certainty is rarely attainable, and this would be a degree of perfection not required of the jury by the laws." On error proceedings to this court LAKE, J., said: " Perhaps there is a greater and more dangerous display of adjectives indulged in here than was necessary, or even advisable, but we do not think there is any reason to suppose that the jury were at all misled thereby. * * * And as to the use of the word 'unequivocal,' to which exception is particularly taken, we can see no objection to it in this connection. The object of the instruction * * * was to impress the minds of the jury with the impropriety of indulging in unreasonable, captious doubts, as is not unfrequently done, in order to escape the legitimate effect of morally satisfactory evidence." The second objection to the instruction is that it does not enunciate a proposition of law but is in the nature of argument. In *Dunn v. People*, 109 Ill., 635, an instruction much like the one under consideration was held by that court to be more like an argument than a proposition of law, and declared to be erroneous. There is, however, a difference between the instruction in the Illinois case and the one under consideration. For our part we entirely approve of this instruction given by the trial court. The doubt on which a juror predicates his verdict of not guilty must always be a reasonable one; and a doubt produced by undue sensiblity in the mind of a juror in view of the consequences of his verdict is not a reasonable doubt. Nor can a juror lawfully conjecture the existence of a fact not warranted by the evidence, and say that a doubt predicated thereon is a reasonable one. Jurors may not lawfully disbelieve as jurors if from the evidence they would believe as men.

The oath taken by a juror does not impose on him an obligation to doubt where no doubt would exist if no oath had been administered; and if from all the evidence in the case the jury have an abiding conviction of the guilt of the defendant, and are satisfied to a moral certainty that he is guilty of the charge made against him, then the jury is satisfied beyond a reasonable doubt. These are the propositions enunciated by the instruction, and they are not arguments; they are propositions of law as sound as they are sensible.

5. That the court erred in giving on its own motion instruction No. 16, as follows: "The court further instructs the jury that in criminal law a person is always held to intend the natural and probable results of his own acts, unless the contrary is made to appear from the evidence; and if one with deliberation and premeditation uses a deadly weapon like a pistol and shoots another intentionally and such other is wounded, and in consequence thereof dies, the person thus shooting is held responsible for the death, and if the killing is neither justifiable nor excusable in law he is liable to be punished for murder in the first degree." The just criticism on this instruction is that the element of malice is omitted; but the court was not obliged to use in every instruction the terms "purposely and of deliberate and premeditated malice" found in the statute. The court told the jury in its third instruction that if the killing of Bates was done purposely and with deliberate and premeditated malice it was murder in the first degree; and in the seventh instruction he told the jury that in order for the killing of Bates to have been murder in the first degree, Willis must have killed him purposely and of deliberate and premeditated malice. This we think was sufficient. (*People v. Bawden*, 27 Pac. Rep. [Cal.], 204.)

6. That the court erred in giving on its own motion the seventeenth instruction, as follows: "In considering whether the killing of Amberry Bates was justifiable on

the grounds of self-defense, you should consider all the circumstances attending the killing, the conduct of the parties at the time and immediately prior thereto, and the degree of force used by the prisoner in making what he claimed to be this self-defense as bearing upon the question, whether the shot or shots were actually fired in ·self-defense or whether fired in carrying out an unlawful purpose." The criticisms on this instruction are two : First, that the court submitted to the consideration of the jury the degree of force used by Willis in defending himself against the deceased; and, second, that the words "in evidence" should have been included in the phrase "they should consider all the circumstances attending the killing." There is no merit in either one of these objections.

7. That the court erred in giving on its own motion instruction No. 18, as follows: "To justify the taking of life in self-defense it must appear from the evidence that the defendant not only really and in good faith endeavored to decline any further trouble and to escape from his assailant before the fatal shot was fired, but it must also appear that the circumstances were such as to excite the fears of a reasonable person that the deceased intended to take his life, or do him great bodily harm, and also that the defendant really acted under the influence of these fears, and not in a spirit of revenge." The defense of Willis to the charge upon which he was tried was that he killed Bates in self-defense. By this instruction the court told the jury that for Willis to make out his defense it must appear from the evidence that he in good faith endeavored to decline any further trouble with Bates and endeavored to escape from him before he shot him. In *Parrish v. State*, 14 Neb., 60, it was held: "In case of personal conflict resulting in death, in order to prove the defense of justifiable homicide, it must appear that the party killing had endeavored by all reasonable means, before giving the fatal blow, to escape from the scene of the difficulty." It appears from the re-

ported opinion in that case that Parrish killed the deceased while he was retreating and endeavoring to escape from a crowd of which Parrish was one. In view of the facts there can be no question as to the correctness of the rule as applied to the evidence in that case. In *Pond v. People*, 8 Mich., 150, it is said: "Whenever a forcible felony is attempted against a person or property, the person resisting the attempt is not obliged to retreat, but may pursue his adversary, if necessary, till he finds himself out of danger. But he may not properly take life if the evil may be prevented by other means within his power." In *Erwin v. State*, 29 O. St., 186, the facts were: A controversy had arisen shortly before the homicide, between Erwin and the deceased as to the possession of a building or shed. Erwin's tools had been thrown out of the shed, and he replaced them and locked the building, and the locks were afterwards broken. On the day of the homicide Erwin was in the shed securing his tools, and the deceased was near his own house and close by the shed, when angry words passed between the deceased and Erwin. The deceased, with an axe on his shoulder, approached in a threatening manner the shed where Erwin was, and as he approached Erwin warned him not to enter the shed. The deceased did not heed the warning and advanced to the shed within striking distance of Erwin, and the latter shot and killed him. The court held: "Where a person in the lawful pursuit of his business, and without blame, is violently assaulted by one who manifestly and maliciously intends and endeavors to kill him, the person so assaulted, without retreating, although it be in his power to do so without increasing his danger, may kill his assailant if necessary to save his own life or prevent enormous bodily harm." To the same effect see *Perkins v. State*, 47 N. W. Rep. [Wis.], 827; *State v. Sloan*, 47 Mo., 604; *Presser v. State*, 77 Ind., 274; *State v. Burke*, 30 Ia., 331; *Patillo v. State*, 3 S. W. Rep. [Tex.], 766. In the case at bar the

evidence tended to show that Bates was a large and power-
ful man, of a quarrelsome disposition, especially so when
drinking; that he had repeatedly made threats against
Willis, and that these threats had been communicated to
the latter; that on the afternoon of the homicide Bates was
in the saloon of Willis and had been drinking intoxicating
liquors; that a quarrel arose between Bates and Willis and
Willis ordered Bates to leave the saloon; that Bates de-
clined to do this, but took off his coat and throwing it on
a counter or table walked up in front of the bar behind
which Willis was standing and said: "I can do you," at
the same time putting his hand behind him or into his hip
pocket, at which moment Willis shot him. Keeping in
view the facts of this case, we think the instruction, in so
far as it told the jury that to justify Willis in taking the
life of Bates in self-defense, it must appear from the evi-
dence that Willis endeavored to escape from Bates before
shooting him, was erroneous. If Willis, at the time Bates
approached him and put his hand behind him, honestly
believed, as a reasonable human being, that Bates was about
to attempt to take his life or to do him serious bodily harm,
the law did not require him to fly. He had a right to
stand his ground and make such defense as he honestly be-
lieved was absolutely necessary to protect himself from
death or serious injury. The rule of the common law that
to justify a party assaulted in taking the life of his assail-
ant he "must retreat to the wall" is not applicable to the
facts in this case. That rule probably had its origin in an
age before the use of fire-arms and gunpowder became
general. The common law rule, however, is a general one
and varies with the circumstances of each case. If the
encounter between Bates and Willis had taken place in
an open field or in a street, the instruction of the court
would have been less objectionable and less prejudicial to
the plaintiff in error. Willis was in his own house, en-
gaged in the pursuit of his business, and to say to the jury

that when Bates approached him with threatening gestures, if Willis honestly believed that Bates was then about to shoot him or make an assault upon him which might result in seriously injuring him or depriving him of his life, that at that moment it was his duty to endeavor to escape, was equivalent to telling the jury that it was the duty of Willis at the time to fly, though by so doing his danger might be augmented.    Nature has endowed all living beings with the love of life and the instinct of self-preservation.    Man is no exception to this law; and when he is unlawfully attacked, and the circumstances surrounding him fix in his mind a sincere conviction that his life is endangered or his body in imminent, peril, he may lawfully do that thing which in his judgment as a reasonable human being, he honestly deems absolutely necessary to protect his life or save his body from serious injury.

8. That the court erred in giving on its own motion instruction No. 20, as follows: "You are instructed that mere words, however irritating, are no excuse for a felonious assault, and although you may believe from the evidence that insulting and opprobious epithets were used by the deceased, Amberry Bates, to the defendant James T. Willis, yet if said defendant Willis immediately revenged himself by using a revolver and shooting and killing the said Amberry Bates, then the defendant is guilty and you should so find from your verdict." Under the evidence in the case this instruction was correct.

9. That the court erred in giving instruction No. 21, as follows: "You are instructed that the fact that the deceased, Amberry Bates, may or may not have been of a quarrelsome disposition, or that he may have made assaults upon other parties, does not affect the nature of the act of killing him.   Such testimony is admissible only as it may tend to throw light upon the question as to whether or not the defendant acted in self-defense, and can only be considered by you for this purpose.   If you find beyond a rea-

sonable doubt that the killing was not done in self-defense, then the act was murder or manslaughter, and the character of the deceased is immaterial, and it matters not whether he was a good or a bad man." This instruction was correct.

10. That the court erred in refusing to give instruction No. 16, requested by the plaintiff in error. It is as follows: "The court instructs the jury, as a matter of law, that the evidence of communicated threats, made by the deceased against the defendant, is intended to shed light upon the mental attitude of the prisoner towards the deceased when the homicide occurred. " Uncommunicated threats are evidence of the mental attitude of the deceased towards the prisoner. Both are admissible when such threats have been made, recently before the killing, by the deceased against the accused, and uncommunicated to him before the killing. It is proper to permit the defendant to prove that on occasions recently before the killing the deceased threatened to others, upon more than one occasion, to kill the defendant, although it does not appear that such threats were ever communicated to the defendant before the killing." There was no error in refusing to give this instruction, for the reason that the court had already given the substance of it in instructions 10, 11, and 13, given at the request of the plaintiff in error.

11. The verdict in this case was rendered on the 7th day of April. On the 9th day of April a motion for a new trial was filed. On the 19th of April the plaintiff in error filed a motion to quash the verdict, for the reason that the same was not returned or delivered in open court. We will not consider this error, for the reason that it was not assigned in the motion for a new trial. If this verdict was not returned in open court, the plaintiff in error knew that at the time he filed his motion for a new trial, and should have made that one of the grounds thereof. Filing a motion to quash a verdict more than three days after its rendition is equivalent to amending the motion for a new trial, which cannot be done.

Willis v. State.

12. The next error alleged is that the court erred in not sustaining the motion of the plaintiff in error for a new trial on the third ground alleged in said motion, namely, that one David Waterman, one of the jurors who tried the plaintiff in error, testified on his *voir dire* examination that he had no opinion as to the guilt or innocence of the plaintiff in error; and that in truth and in fact, before the trial began, said Waterman had expressed an opinion as to the guilt of the plaintiff in error. The record does not contain the *voir dire* examination of Waterman. The affidavits filed in support of this motion for the plaintiff in error tend to show that Waterman, before the trial of the plaintiff in error began, had expressed an opinion that the plaintiff in error should be punished for the killing of Bates, and that on his *voir dire* examination he testified that he had formed or expressed no opinion as to the guilt or innocence of the plaintiff in error. The affidavit of Waterman in resistance of this motion denies that he had ever formed or expressed an opinion prior to the time of the trial as to the guilt or innocence of the plaintiff in error. The district court passed upon the conflicting statements of these affidavits. We cannot say that he came to an incorrect conclusion.

13. The final assignment of error is that the court erred in overruling the motion of plaintiff in error to arrest the judgment. This motion is predicated upon the contention that the facts stated in the information do not constitute the crime of murder. The information is in words and figures as follows: "Of the April term of the district court, held within and for Dakota county, Nebraska, in the year of our Lord one thousand eight hundred and ninety-four, J. J. McAllister, prosecuting attorney for said county of Dakota, in the name and by the authority and on behalf of the state of Nebraska, information makes, and gives the court to understand and be informed, that James T. Willis, on the second day of January, in the year of our

Lord one thousand eight hundred and ninety-four, in the county of Dakota and state of Nebraska, contriving and intending, of his deliberate and premeditated malice, one Amberry Bates feloniously to kill and murder, in and upon said Amberry Bates, then and there being, did, unlawfully, willfully, forcibly, purposely, and of deliberate and premeditated malice, make an assault, and that the said James T. Willis, a certain pistol, then and there charged with gunpowder and divers, to-wit, five, leaden bullets, which said pistol he, the said James T. Willis, in his right hand then and there had and held, then and there, willfully, unlawfully, purposely, and of deliberate and premeditated malice, did discharge and shoot off, to, against, and upon the said Amberry Bates, and that the said James T. Willis, with the divers, to-wit, two, of the leaden bullets aforesaid, then and there, by force of the gunpowder aforesaid, by the said James T. Willis aforesaid discharged and shot off as aforesaid, then and there, unlawfully, purposely, and of deliberate and premeditated malice, did strike, penetrate, and wound the said Amberry Bates, in and upon the left side of the forehead of him, the said Amberry Bates, thereby then and there, purposely and of deliberate and premeditated malice, giving to him, the said Amberry Bates, in and upon the breast of him, the said Amberry Bates, one mortal wound, of the length of one inch and of the depth of six inches, of which said mortal wound the said Amberry Bates then and there instantly died; and so the said J. J. McAllister, prosecuting attorney as aforesaid, does say that the said James T. Willis him, the said Amberry Bates, unlawfully, purposely, and of deliberate and premeditated malice, did kill and murder, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Nebraska." The defect of the information is alleged to be that in the charging part thereof there is no allegation of an intent or purpose to kill. Counsel cite us to the case of *Schaffer v.*

*State*, 22 Neb., 557, in support of their contention; but the information in that case did not contain the sentence "contriving and intending, of his deliberate and premeditated malice," etc., and is therefore not in point.   The information is entirely correct.

For the errors committed by the court in giving the eighteenth and nineteenth instructions of the instructions on its own motion, set forth above, the judgment of the district court is reversed and the case remanded.

REVERSED AND REMANDED.