### Harry Bunn v. The People of the State of Illinois.

1. PRACTICE—*Insufficient Affidavit for Continuance.*—An affidavit for continuance which fails to state that there were no other witnesses by whom affiant could prove, or so fully prove, the facts which he expected to show by the absent witnesses, is not sufficient to warrant a continuance on account of the absence of such witnesses.

2. SAME—*Incapacity of Lawyer, When No Ground for Continuance.*—Where the issues involved are simple, both as to the facts and the law involved, and affiant knows, eighteen days before the date of trial, that the attorney whom he first employed to attend to the case, could not be present to try it, the want of time on his part to obtain other counsel to try the case properly after he discovered that the counsel he first engaged would not be able to be present at the trial, is not a sufficient ground for granting a continuance.

Bunn v. The People.

Bastardy.—Appeal from the County Court of McLean County; the Hon. R. A. RUSSELL, Judge presiding. Heard in this court at the November term, 1901. Affirmed. Opinion filed June 20, 1902.

A. J. BARR, JAMES L. LOAR and LIVINGSTON & BACH, attorneys for appellant.

WOOD & ELMER, JESSE E. HOFFMAN and WELTY & STERLING, attorneys for appellee.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

This was a proceeding under the bastardy act, commenced on June 26, 1901, by Kate Hutchinson, making complaint in writing under oath to a justice of the peace of McLean county that she is an unmarried woman and the mother of a child, then about one year old, which under the laws of this State is deemed a bastard, and that Harry Bunn is the father of said child.

On the day that the complaint was made, the justice issued to a constable of that county, a warrant for Bunn, and under it, on the same day, he was brought before the justice and a preliminary examination was then had by the justice who required him to give bond to answer the charge in the complaint at the next succeeding term of the County Court. Bunn gave bond as required, and on the 27th day of July, 1901, the justice filed with the county clerk, a transcript of his docket in the bastardy proceeding, and the original complaint, warrant and bond. The succeeding term of the County Court convened August 12, 1901, and on August 14, 1901, being the third day of the term, Bunn applied for a continuance and presented his motion and affidavit therefor as follows:

The defendant, Harry Bunn, limiting his appearance for the purpose of this motion, and this motion only, hereby moves the court to continue the above entitled cause until the next term of this court, and bases said motion on the following affidavit:

"Coming into court with his limited appearance for the purpose of filing this affidavit and making this motion only,

Harry Bunn, being first duly sworn, deposes and says, that he is the defendant in the above entitled action; that he can not safely proceed to the trial of this cause at the present term of this court, on account of the absence of many material witnesses, as will hereafter more fully appear. Affiant further says that the papers from W. B. Hendryx, who tried the case in the justice's court, were not filed in the office of the clerk of the County Court until July 27, 1901. That affiant did not know that the said case had been filed in said court until Tuesday, the 5th day of August, 1901. That the court for this term did not convene until two days ago. That he is wholly unprepared to go to trial at this time or at this term.

Affiant further states that for more than three years last past, Edward Maher, of the city of Chicago, Ill., has been his regular attorney. That after this case was commenced in this county last June, he employed the said Maher to defend affiant in this case. That the said alleged offense is claimed, so affiant is informed, to have been committed in the city of Chicago, on or about the 1st day of November, 1899. That said Maher knows several of the witnesses conversant with affiant's location and manner of living during such time and after said employment commenced, and affiant believes had almost finished the complete preparation of affiant's defense herein. That said attorney had obtained statements from various witnesses on his behalf, but affiant is unable to state all their names and unable to set forth in this affidavit all the facts which they can give in evidence, for the reason that all these facts and all their names have not been communicated to this affiant by said attorney, Edward Maher. That on the 27th day of July, affiant received a letter from his attorney, Edward Maher, that he was leaving for England, having been suddenly called there by cablegram announcing the very serious illness of his sister who lived there, and did leave for England on the 27th day of July, 1901. That affiant was further informed that the said Maher would return some time about the first of September, or a little later, and affiant believes that if this case be continued until the next term of this court, that the said Maher will have returned to this country from England and will be able to try this said case for affiant.

Affiant further states that he can not proceed to the trial of the said case without the services of said Edward Maher, for the reason that he can not employ any attorney who can prepare the case for trial at this term of the said

court. That no attorney in Bloomington can possibly procure the Chicago witnesses as well as the said Maher, the said Maher being especially well qualified to prepare and try this said case for the defendant owing to information and opportunities the said Maher derived in the conduct of other business for this defendant. That as soon as affiant learned that it was impossible for said attorney to be here, he employed A. J. Barr, of this city, to look after his said case for him, and they have been diligent in trying to procure the witnesses in affiant's behalf, but that they can not procure even the names of all the important witnesses in affiant's behalf, for the reason that Edward Maher is the only person who does know them, so affiant believes, but affiant states that if this case is continued until the next term of this court, affiant fully believes that they will be able to secure the names and the testimony of all such witnesses. That one J. P. Hayde, who is at this time a resident of the city of Chicago, in this State, is an important witness on behalf of the affiant, and if present at the trial of this cause would testify that the complaining witness in this case boarded at a certain boarding house at 174 Oakwood Boulevard, Chicago, at the same time that the said Hayde made his home at such boarding house, which was conducted and kept by a Mrs. Sheldon, and that while they were living as occupants of said boarding house, which was about the first of November, 1899, also some few weeks prior thereto, as well as a few weeks after said date, the complaining witness made a practice of and continued to go out from said house with different men who would call for her, and while out would visit different saloons, road houses and wine rooms, and was accustomed while doing so to become intoxicated and otherwise conducted herself in an unchaste way. That on returning from one such trip she signaled the said Hayde by rapping on his window at about half past two o'clock in the morning and asked him to open the window that she might get in the house without the other inmates being aware of the time of her return or her condition.

Affiant says that he expects to prove by the said Hayde that at such time he raised the window opening from the street into his own room and assisted the said Mrs. Hutchinson, the party complainant in this cause, into the house through said window, and that she was at such time in a very base state of intoxication.

Affiant further says that he expects to prove by the said Hayde that the said Mrs. Hutchinson admitted to him at

that time that she had been out spending the evening with a man or men, and that while so spending the evening she had become intoxicated.

Affiant says that he further expects to prove by the said witness that the complainant, Mrs. Hutchinson, frequently did, and was in the habit of giving money to gentlemen with whom she went out to spend the evening for the purpose of paying the expenses of the evening and as an inducement for them to accompany her on the previously mentioned orgies.

Affiant further says that a man who formerly lived in Chicago, at the boarding house above mentioned, whose name affiant understands to be Ridenhour, whose first name affiant does not know, and whose present address is also unknown to affiant, but affiant is informed that said witness is now living somewhere in the State of Maryland, and who, if present, would be an important witness on behalf of affiant, in that he expects to prove by the said witness that the complainant, Mrs. Hutchinson, about the first of November, 1899, while living at the boarding house above mentioned, told to the said witness, Ridenhour, while sitting at a cafe drinking intoxicating liquors, that she had just been caught by a wife in the said wife's husband's rooms, in a compromising position, about eleven o'clock of the same night; that she was very nervous and terribly wrought up over the matter, and was seeking advice and assistance from the said witness in order that she might not be mentioned in divorce proceedings that she feared would be commenced by the said wife against the husband. Affiant says that he does not know positively whether his attorney, Mr. Maher, knows the address of the said witness or not, but believes that the said attorney will be able to locate said witness and have his testimony here in this court at the next term thereof, if this case be continued.

Affiant further says that one Mrs. L. M. Sheldon, the lady who kept, at the times mentioned, and still conducts said above mentioned boarding house, is an important witness on affiant's behalf, and if present would testify that while the complainant was living in her house she told the said complainant that she could not afford to have her remain in said house and continue to visit saloons, wine rooms, etc., at all hours of the night, with gentlemen who called for her at such times, and that she told her at different times that she could not afford to have her seen leaving her house and going to such places at all hours of the night, as she had been doing in the past. Affiant further

says that he expects to prove by the said Mrs. Sheldon that the complainant has been twice married; that she had one child by each of said husbands; that while she was living at her house she would go away in company with different men, sometimes remaining away all night, leaving the care of said children to the boarders who would happen to hear them crying.

Affiant further says that he can not safely go to trial without a witness by the name of William DeLaney, who was a boarder at the said boarding house at and about the first of November, 1899, and who occupied the adjoining room to the complainant, Mrs. Hutchinson, and who, affiant believes, would swear, if here, that the said Mrs. Hutchinson, about the time mentioned, frequently came into his room after he had retired, and would sit on the side of the bed he was occupying, and otherwise visit with the said witness; that said complainant had frequently given to said witness money with which to pay expenses of evening entertainments. Affiant says that his said attorney, Maher, is conversant with other facts expected to be proven by the said witnesses, which facts are not familiar to said affiant and therefore can not be specifically stated.

Affiant further says that he can not safely go to trial without a certain witness whose name is unknown to affiant, but who, he believes, either has been or can be located by his said attorney, Maher, and who was a resident of the city of Chicago, and who was connected with the Elevated Loop Railroad in the capacity of a superintendent, who, affiant is informed and believes, would testify if present at the trial of this cause, that along about the first of November, 1899, he, the said witness mentioned, sent a carriage to said boarding house at about half past nine o'clock in the evening with a note to the complainant; that she went away in said carriage, and, with said witness, visited Smith's road house and wine room, where she became intoxicated, and afterward went with the said witness to the Great Northern Hotel, where complainant and said witness had a misunderstanding, and complainant left said witness, returning home at about two-thirty in the morning. The following day the complainant was very ill and was visited at said boarding house by the said witness. Affiant says that in the month of July, 1900, in the State of Michigan, the complainant in this cause had affiant arrested on the charge upon which he is now brought into court; that Mr. Maher, his attorney referred to, is thoroughly conversant with said litigation in the State of Michigan, wherein affiant is charged

by complainant with being the father of the same child that she now seeks to charge him with being the father of in this proceeding. That affiant has depended upon said attorney solely, for any information of said litigation which might be beneficial in the trial of this cause, and affiant believes that said adjudication is a complete bar and adjudication of the case at bar.

Affiant further says that since being notified by his said attorney, he has been telegraphing and trying to get this case prepared in a way which would justify him in going to trial at this term of the court, using all means at his command to do so; that he has been advised by the attorney hired by him since receiving the announcement of his attorney, Maher's, departure for England, that owing to the absence of the said Maher and the complicated circumstances of this case, it would be impossible for him or any other lawyer in Bloomington or Chicago to properly prepare and try this cause at this term, during the absence of the said Maher, and affiant believes that it would be impossible for any lawyer not familiar with the circumstances in this case to try this case at this term of court without sacrificing the interest of this defendant, for the reason that the said Maher has information and valuable papers relative to this proceeding that it is impossible for this affiant to get until the said Maher's return. That he believes that he can have, by the next term of this court, the deposition of the witnesses heretofore mentioned, in which depositions they will swear substantially to the matters set forth herein, and this affiant desires to do.

Affiant further says that the said Maher had evidence of importance in this case which he is unable to set forth in this affidavit, for the reason that it has been left wholly to Mr. Maher's management, and he is unable to get such information or evidence on account of the sudden calling away of the said Maher to a foreign country. He asks this court to continue this case in order that the deposition of the said witnesses may be taken to be used herein, and that this defendant may have an opportunity to get the papers which Mr. Maher personally holds, pertaining to this case, and such other information as he has obtained, not only in the preparation of this case, but in his connection with the suit in Michigan about the same cause of action, and also other litigation which affiant believes to be closely connected with this suit, and to be highly important.

Affiant says that this motion is not made, or continuance asked, for delay, but that justice may be done, and that he

may be enabled to prove his innocence of the charges made against him in this case, as he positively is in no wise responsible for the paternity of the child in question, and is not guilty as accused by the complainant herein; and since the filing of this case in this court your affiant has not had sufficient time, under the statute, to take the deposition of the witnesses accessible, to affiant's knowledge; that the statute gives him a right to take their deposition, and he desires to avail himself of the statutory right. That affiant further states that he this day telephoned to Chicago to the office of the said Edward Maher, and was informed by the attorney in said office that Edward Maher was in Liverpool and would not return until the first of September, 1901."

The motion for continuance being denied, Bunn excepted. Then, although he was personally present in court and attended by counsel, he stood mute, and the court entered for him a plea of not guilty to the charge in the complaint. The proceeding was then called for trial, a jury impaneled and sworn to try the issue of whether Bunn was the real father of the child as charged in the complaint, and evidence was heard, but was not preserved by bill of exceptions. Both when impaneling the jury and when taking the evidence, Bunn was present and was called upon to take part and given an opportunity to offer his evidence, but he remained mute. The jury, after hearing the evidence and argument for the people, was instructed in writing by the court, "that if they believed from the evidence that the prosecutrix, Kate Hutchinson, was delivered of a bastard child, and that when she became pregnant with such child and at the time of filing her complaint herein, she was an unmarried woman, and if they further believed from the evidence that the defendant, Harry Bunn, is the father of such bastard child, they should find the defendant guilty." And were also further instructed in writing that if they find the issues for the plaintiff, the jury shall say, "We, the jury, find the defendant guilty, and that he is the real father of the child, as charged in the complaint." And that if the jury find the issues for the defendant they shall say, "We, the jury, find the defendant not guilty."

The jury returned a verdict as follows: "We, the jury,

find the defendant guilty, and that he is the real father of the child as charged in the complaint."

Bunn moved for a new trial, but it being denied, he excepted. He then moved in arrest of judgment, but that being also denied, he again excepted. The court then entered a judgment on the verdict, finding that the complaining witness, Kate Hutchinson, is an unmarried woman, and was delivered of a bastard child on August 2, A. D. 1900, of which defendant, Harry Bunn, is the real father; and that " it is therefore ordered and adjudged by the court that the defendant, Harry Bunn, pay the sum of one hundred dollars for the first year, from August 2, 1900, and fifty dollars yearly, for the nine years succeeding said first year, for the support, maintenance and education of said child, and also the costs of the proceeding. It is also ordered by the court, that said defendant, Harry Bunn, give bond as provided by statute, to the satisfaction of the court, with sufficient security to be approved by the court, for the payment of the aforesaid sums of money * * * in equal quarterly installments to the clerk of this court."

Bunn, having excepted to the entry of the judgment, prayed and was allowed an appeal to this court, and to reverse the judgment, insists that the trial court erred in denying his motion to continue; erred in giving an improper instruction to the jury; erred in denying his motions for a new trial and in arrest of judgment; and erred in entering an improper judgment.

As the affidavit for continuance failed to state that there were no other witnesses by whom Bunn could prove, or so fully prove, the facts which he expected to show by the absent witnesses, it was not sufficient to warrant a continuance on account of the absence of such witnesses. Dunn v. The People, 109 Ill. 635; Hodges v. Nash, 141 Ill. 391; Jarvis v. Shacklock, 60 Ill. 378; and McKichan v. McBean, 45 Ill. 228.

It is manifest that the issues involved in this proceeding are simple, both as to the facts and the law involved, and for that reason Bunn could have secured competent coun-

sel to properly try the case in the eighteen days interven-
ing between July 27, 1901, and August 14, 1901, as the
affidavit shows that he knew for that length of time that
the attorney whom he first employed to attend to the case,
could not be present to try it, and therefore it was not a
sufficient cause to continue for want of time on his part to
obtain other counsel to try the case properly after he dis-
covered that the counsel he first engaged would not be
able to be present at the trial. Jarvis v. Shacklock, *supra*,
and Condon v. Brockway, 157 Ill. 90.

And while the affidavit attempts to show that Bunn
used diligence in trying to obtain the names and attend-
ance of persons by whom he could also show material facts
proper in his defense, and in trying to obtain a certified
copy of the proceedings in the case commenced in Michigan,
yet it falls far short of showing facts from which the court
could see that he had used reasonable diligence in that
regard. For aught that can be gleaned from the affidavit,
he and his counsel, employed subsequently to July 27, 1901,
only telegraphed and telephoned to Chicago for that pur-
pose, but when and to whom does not appear.

The proper administration of justice requires that par-
ties to a suit should use all reasonable diligence to be pre-
pared for trial thereof in all cases after they have had such
time as will enable them to do so by the use of reasonable
diligence to attain that end; for otherwise, justice would
be administered tardily when it should be obtained without
unnecessary delay.

We are clearly of opinion that the court properly refused
the continuance on the showing made by the affidavit.

It is contended that the instruction improperly directed
the jury to find the defendant guilty without requiring
them to believe from the evidence that the mother was
unmarried at the time the child was born, as well as when
she became pregnant, and when she filed the complaint.

When fairly considered, we do not think that the instruc-
tion is open to the objection urged, for manifestly the jury
would understand, from the language employed in it, that

they were required to find the defendant guilty upon their
believing from the evidence that the mother was unmar-
ried at the time the child was born, as well as when it was
begotten, and when the complaint was filed; for how else
could they so understand it, since the instruction required
them to believe from the evidence that she was " delivered
of a bastard child."

Besides, in the absence of the evidence being before us,
we must presume that it warranted the court in giving the
instruction in the form in which we find it in the record,
as well as warranting the jury in convicting the defendant.
From what we have said, it is plain that the court properly
refused to grant the defendant a new trial.

The contention that the court was without jurisdiction
to try the case because the complaint fails to show that the
mother of the child was an unmarried woman at the time
the child was born, is also without force, for the reason
that the sworn statement contained in it is, " that she is
(at the time the complaint was made, June 26, 1901)
an unmarried woman, and is the mother of a child which,
under the laws of the State of Illinois, is deemed a bastard,
* * * said child being now about one year old,"
sufficiently shows that she was an unmarried woman
when the child was begotten, born, and the complaint
was made, for the purpose of giving the court juris-
diction; for if the mother was not unmarried when the
child was begotten, born, and the complaint was made,
how could the child be deemed a bastard under the laws
of the State of Illinois at the time the complaint was
made, when, by the laws of the State, a child is only deemed
a bastard under such circumstances, when, ·during such
entire time, the mother is an unmarried woman?

While the language used in the judgment, as entered in
this case, does not show as clearly as it might when the
first year after the birth of the child begins, and for which
defendant is required to pay $100, yet, in effect, we think
it does sufficiently show that it is the year beginning
August 2, 1900, and therefore there is no prejudicial error

committed against appellant by the judgment as it is written.

Finding no reversible error was committed by the trial court the judgment will be affirmed.