FRED OSSENKOP V. STATE OF NEBRASKA.

FILED APRIL 9, 1910.　No. 16,138.

1. Indictment and Information: INDORSEMENT OF WITNESSES. In requiring the names of the state's witnesses to be indorsed on an information charging a criminal offense, the main purpose of the law is to give accused notice of the identity of the witnesses who are to testify against him.

2. Criminal Law: REBUTTAL EVIDENCE: INDORSEMENT OF WITNESSES ON INFORMATION. In a criminal prosecution, rebuttal testimony on behalf of the state may be given by witnesses whose names were not indorsed on the information.

3. ———: TRIAL: POSTPONEMENT. Record for review *held* not to show that the trial court abused its discretion in refusing a postponement sought by defendant on the ground that the state indorsed names of additional witnesses on the information against him, where the last indorsement of the names of witnesses who testified in chief was made nine days before the trial, though defendant's motion was supported by an affidavit stating that his counsel was too busy in the trial of other cases to investigate the character of the additional witnesses.

4. ———: ———: ———. After the state had made its case in chief in a criminal prosecution, an order postponing the trial until four of defendant's witnesses were released from quarantine, or for a period of 21 days, *held* not erroneous, where the order was made on motion of defendant for a continuance until the next term of court, or for a postponement until the release of the quarantine, there being nothing in the record to show that the trial was resumed when the quarantine was in force.

5. ———: REFUSAL OF CONTINUANCE. An order overruling a motion by defendant for a continuance in a criminal case will not be reversed on a record which fails to show that he was prejudiced by the order, or that in making it the trial court abused its discretion.

6. ———: DENIAL OF CHANGE OF VENUE: REVIEW. Where there has been no abuse of discretion on part of the trial court in denying a change of venue, its ruling will not be disturbed.

7. ———: OPENING STATEMENT: HARMLESS ERROR. In the opening statement of counsel for the state in a criminal prosecution, the narration in good faith of facts which are not subsequently proved, or which are inadmissible under the rules of evidence, is not reversible error, where the record shows defendant is in nowise prejudiced.

8. ———: SEPARATION OF JURY: REVIEW. After' the state had made its case in chief in a prosecution for' murder in the second degree, an order permitting the jury, upon being admonished, to separate for the period of 21 days during a postponement allowed on the ground that four of defendant's witnesses had been quarantined on account of smallpox, *held* not an abuse of discretion or reversible error, where the record failed to show misconduct on the part of any juror or prejudice to defendant.

9. Witnesses: PHYSICIANS: CONFIDENTIAL COMMUNICATIONS. The purpose of section 333 of the code, in providing that a physician shall not be allowed to testify to confidential communications, is to prevent the improper disclosure of secrets or facts learned by means of the confidential relation between physician and patient.

10. ———: ———: ———. Where defendant in a prosecution for murder employs a physician to examine the body of his victim and report conditions, the physician, by reason of such employment, is not excused from testifying to the results of his' investigation, when called as a witness on behalf of the state.

11. Criminal Law: EVIDENCE. Where it was not shown in a prosecution for murder that the victim of the homicide had been under the influence of liquor, there was no error in sustaining an objection to the following question propounded to a witness for defendant: "When under the influence of liquor, what wa· his disposition as to being quarrelsome or otherwise"?

12. ———: ———: REVIEW. In reviewing the proceedings in a criminal prosecution, a conviction will not be set aside for nonprejudicial rulings in admitting or in rejecting evidence.

13. ———: INSTRUCTIONS. Instruction relating to declarations made by defendant after an assault resulting in a homicide *held* not erroneous.

ERROR to the district court for Cass County: HARVEY D. TRAVIS, JUDGE. *Affirmed.*

*Matthew Gering,* for plaintiff in error.

*William T. Thompson, Attorney General,* and *George W. Ayres, contra.*

ROSE, J.

In a prosecution by the state in the district court for Cass county, Fred Ossenkop, defendant, was convicted of manslaughter and sentenced to serve a term of ten years in the penitentiary. As plaintiff in error he now presents for review the record of his conviction.

1. The first ruling challenged as erroneous permitted the county attorney to indorse on the information the names of a number of witnesses without granting a continuance. The information was filed November 23, 1908, and at the time bore the names of 19 witnesses for the state. With permission of the court, the names of additional witnesses were indorsed on the information as follows: January 19, 1909, five; January 25, 1909, six; February 2, 1909, three. The case was called for trial February 4, 1909. Defendant does not seriously complain because the state was permitted to indorse on the information the names of the additional witnesses, but insists the time to investigate their character and their knowledge of the facts was wholly insufficient. He contends further that he did not have time enough to prepare for the trial or to meet their proofs with testimony in his own behalf, and that his sole counsel was too busy in other cases to make the necessary investigation or to inquire into the antecedents of the state's witnesses. The statute requiring names of witnesses to be indorsed on the information is as follows: "All informations shall be filed during term,

in the court having jurisdiction of the offense specified therein, by the prosecuting attorney of the proper county as informant; he shall subscribe his name thereto, and indorse thereon the names of the witnesses known to him at the time of filing the same; and at such time before the trial of any case as the court may, by rule or otherwise, prescribe, he shall indorse thereon the names. of such other witnesses as shall then be known to him." Criminal code, sec. 579.

In the manner stated in this law, defendant is entitled to know the names of the witnesses who are to testify against him, and the giving of this information is the main purpose of the statute. *Reed v. State,* 75 Neb. 509. Of course, a trial court cannot deprive accused of the benefit of this statutory right by an abuse of discretion which prevents a reasonable postponement to enable him to meet material testimony of witnesses whose names were indorsed on the information immediately preceding the trial. *Rauschkolb v. State,* 46 Neb. 658. In the present case, was there an abuse of discretion in refusing to grant a continuance? The witnesses whose names were indorsed on the information February 2, 1909, did not testify when the state was making its case in chief, nor until the trial had been postponed for 21 days. Rebuttal testimony on behalf of the state may be given by witnesses whose names were not indorsed on the information. *Clements v. State,* 80 Neb. 313. Whether they testified in rebuttal is therefore not material to this inquiry. For these reasons, the indorsement of three names two days before the time set for trial did not make the order denying the continuance prejudicially erroneous. It appears from facts already stated that after the indorsement of six names, January 25, 1909, defendant had until February 4, 1909, for investigation and preparation. It is not affirmatively shown that the time was too short, or that the court in refusing to grant an extension or to postpone the trial abused its discretion. The skill and vigor of the defense, when considered with the entire record, refute

defendant's argument on this point. That counsel was too busy in other cases to investigate the character of the state's witnesses and the nature of their testimony, under the circumstances disclosed, does not require a different conclusion. *Dunn v. People,* 109 Ill. 635.

2. Complaint is also made because the district court, four days after the commencement of the trial, refused to continue the case until the next term of court. The motion for the continuance was based on the ground that four of defendant's witnesses, on account of smallpox, were quarantined at the time by the state board of health. Defendant's motion was in the alternative form, and contained a request for a continuance until the next term of court or for a postponement until the release of the quarantine. The court denied the continuance until the next term of court, but formally sustained the motion to postpone the case until the release of the quarantine, or until March 2, 1909, a period of 21 days. This order was not made, however, until a physician, under authority of the court, had reported the existence of smallpox and expressed the opinion it would be unsafe to release the quarantine in less than ten days. The record does not show when the quarantine was released, but does show that the trial proceeded at the appointed time, and that three of the quarantined witnesses testified on behalf of defendant. For the purpose of showing error, it will not be presumed that the court forced defendant into the trial when his witnesses were detained by quarantine, or proceeded when the quarantine was in force. Error must affirmatively appear on the face of the record. Presumptions are in favor of the regularity of judicial proceedings. The postponement having been granted in substantial compliance with the terms of the motion made by defendant, he cannot make the order the basis of a reversal on a record which fails to show that the trial was resumed before the quarantine was released, or that there was reason for further postponement.

3. In response to a subpoena, Wesley Knight appeared

as a witness for defendant February 8, 1909, but did not testify. During the intermission he went to Cuba, and on account of his absence defendant asked for a continuance, which was denied March 2, 1909. This ruling is also assigned as error. The motion was supported by an affidavit, in which defendant undertook to state the nature of the testimony Knight would give, if present. It does not appear from the affidavit that he witnessed the homicide, or that he was present at the time, or that he knew any fact immediately connected with that event. The facts recited in the affidavit relate principally to the friendly relations between defendant and Byrnes, the victim of the homicide; to their having jointly rented a hall for a dance at Walton; to their never having quarreled; and to the reputation of defendant as a peaceable and law-abiding citizen. As to these matters, other witnesses testified on behalf of defendant; and, while it was stated in the affidavit that all of the facts mentioned therein could only be proved by the absent witness, Knight, the following is the only enumerated fact of which defendant offered no proof at the trial: "Byrnes was a man of ungovernable temper, and when under the influence of liquor was quite quarrelsome." The record contains no proof that Byrnes was under the influence of liquor, and the affidavit does not state that Knight alone could testify Byrnes had an ungovernable temper. It will not be presumed, on review, that this fact could only be shown by the absent witness, especially since many of the witnesses in testifying stated they had known Byrnes during the greater part of his life. It does not affirmatively appear, therefore, that there was an abuse of discretion in overruling the motion. *Burgo v. State*, 26 Neb. 639; *Dunn v. People*, 109 Ill. 635.

4. The next assignment is: A motion by defendant for a change of venue was erroneously overruled. He argues that it was impossible to have a fair and impartial trial in Cass county for the following reasons: Four murders had been committed therein within a period of four months

prior to the trial. These crimes were subjects of universal conversation, and the details were published in the news-papers. The public mind was inflamed. The excitement was intense. There was undue haste in the prosecution. Affidavits presenting these grounds for a change of venue were filed by defendant in support of the motion, but the state resisted the application by a greater number of af-fidavits denying the existence of the passion and preju-dice on which the motion was based. The application was directed to the trial court's discretion, and only an abuse thereof would justify an interference with the ruling below. *Sweet v. State,* 75 Neb. 263; *Jahnke v. State,* 68 Neb. 154; *Goldsberry v. State,* 66 Neb. 312; *Argabright v. State,* 62 Neb. 402; *Welsh v. State,* 60 Neb. 101; *Stoppert v. Nierle,* 45 Neb. 105; *Olive v. State,* 11 Neb. 3. On the face of the affidavits, an abuse of discretion on part of the trial court in denying a change of venue is not shown. Furthermore, passion and prejudice against defendant are not reflected in the verdict, when it is considered in the light of the record. Defendant was charged with murder in the second degree. The testimony on behalf of the state would sustain a verdict of guilty as thus charged. Under the instructions of the court, the jury were at liberty to find defendant guilty of murder in the second degree or of manslaughter. The penalties for each felony were ex-plained to the jury by the trial court. Knowing the in-structions permitted a verdict which might result in a life sentence, they returned a verdict under which the trial court could have imposed a sentence of one year only. In this view of the proceedings, the conduct of the jury does not indicate that they were influenced by passion or prejudice, but furnishes a reason for upholding the trial court in overruling defendant's motion for a change of venue. In this respect the record does not show an abuse of discretion.

5. The homicide occurred at the town of Eagle, Septem-ber 16, 1908, in the evening, after a picnic at that place.

38

In the opening statement to the jury, counsel for the state made use of the following language: "We will show that the deputy marshal, who was in the saloon in the town of Eagle in the pursuit of his duty as an officer, was compelled to leave the place by the defendant; that the bartender in the saloon was told by the defendant, at a time a fight was going on that he wanted to stop, that he would kill him if he came around the bar." The failure of the trial court to sustain an objection to this statement is made the basis of another assignment of error. The statutory authority under which counsel for the state proceeded is as follows: "After the jury has been impaneled and sworn, the trial shall proceed in the following order: First. The counsel for the state must state the case of the prosecution, and may briefly state the evidence by which he expects to sustain it." Criminal code, sec. 478. Pursuant to this direction of the criminal code, counsel attempted to state the evidence by which he expected to prove the charge against defendant. Was the ruling of the court reversible error? The answer must be in the negative. Bad faith on part of the prosecution in making the statement is not shown. It was not made by a witness under oath. The jury understood from the instructions that a verdict of guilty could be based on evidence alone. The statement was obviously directed to the question of malice, which is an essential element of murder in the second degree, and counsel was no doubt convinced that the facts mentioned were provable in making the state's case in chief. The statement did not prejudice defendant, because the jury found him guilty of manslaughter, a felony containing no element of malice. That the statement was not prejudicially erroneous is supported by abundant authority. Statements made in good faith, though not subsequently proved, and statements of unprovable facts are not necessarily prejudicial to defendant. *People v. Gleason*, 127 Cal. 323; *People v. Lewis*, 124 Cal. 551; *People v. Searcey*, 121 Cal. 1; *Reynolds v. State*, 147 Ind. 3; *State v. Todd*, 110 Ia. 631; *State v. Allen*, 100 Ia. 7; *State v.*

*Tippet*, 94 Ia. 646; *State v. Meshek*, 61 Ia. 316; *People v. Fowler*, 104 Mich. 449. In opening statements to juries, the improper rehearsal of facts not provable under the rules of evidence sometimes resulted in reversing judgments, but it is unnecessary to discuss or cite cases so holding, as they are not applicable to the record in the case at bar.

6. At the beginning of the trial the sheriff was directed to keep the jury together; but after the state had made its case in chief the trial court allowed them to separate for a period of 21 days, and this is the ruling most vehemently assailed. That the court had power to change its ruling for a sufficient reason is too plain for argument. The authority of the court to permit a jury to separate during the trial in a criminal case is recognized by the following provisions of the criminal code: "If the jury are permitted to separate during the trial, they shall be admonished by the court that it is their duty not to converse with, or suffer themselves to be addressed by, any other person on the subject of the trial, or to listen to any conversation on the subject, and that it is their duty not to form or express an opinion thereon until the cause is finally submitted to them." Criminal code, sec. 484. Notwithstanding this statute, it is insisted error is shown by the separation alone, and that prejudice should be presumed from the fact that the jurors were permitted to mingle with their neighbors for a period of 21 days, when the public mind was inflamed by the reports of other homicides. The statute recognizing the authority of the trial court to permit the jury to separate has been the subject of discussion by this court in a number of cases. In *St. Louis v. State*, 8 Neb. 405, 413, Judge LAKE used the following language: "While it is the usual and perhaps the better practice in most capital cases thus to keep the jury together, there is no provision of our criminal code requiring it to be done. On the contrary, section 484 expressly provides for such separations up to the time when the case is finally submitted; and whether they shall

be permitted or not in any given case is left to the discretion of the presiding judge." The same view was expressed in *Walrath v. State,* 8 Neb. 80, 92, and in *Langford v. State,* 32 Neb. 782. This is not a capital case, but the reasons for keeping the jury together still exist, and the practice has not been changed by the statute, except where the court, for reasons which are deemed sufficient, permits a separation. That it is within the discretion of the trial court to allow the jury to separate is shown by the cases cited.

A conviction may be set aside, however, where there has been an abuse of discretion, or where the record shows that defendant has been prejudiced. Does the record present either of these contingencies? In the midst of the trial, some of defendant's witnesses were quarantined on account of smallpox. A physician appointed by the court reported that it would be unsafe to release the quarantine in less than ten days. It would naturally occur to the court that free communication with the quarantined witnesses for a few days more might be important to defendant. A proper regard for defendant's rights would suggest a reasonable postponement, and the time was fixed at 21 days. To keep the jury together during all that time would be a hardship which could only be justified by necessity. Whether the occasion for that course existed was a question for the determination of the trial court. From the bench it was stated that some of defendant's witnesses had been quarantined on account of smallpox, and the jury were permitted to separate after having been admonished as follows: "Upon this ground a necessity has arisen for a continuance of the case, or rather a postponement for about 20 days until the quarantine can be removed. You appreciate the gravity of the situation. You have been kept together until now, but under the circumstances of the case the court deems it best to allow you to separate. It is the duty of the court to admonish you as to your duty upon separation. As I have heretofore said, you are not to discuss the matter

between yourselves nor with any person else. You must refrain from coming to any conclusion upon the evidence until all of the evidence is before you. This is your duty as jurors. You may be annoyed by thoughtless persons talking to you about the case, but to protect yourselves you must state positively, if any such occasions arise, to the people or the persons, that they must not talk to you about the case. I think you appreciate what your duties are and the responsibility resting upon your shoulders. Keep in mind always the admonitions of the court until you return here again on the morning of March 2, 1909, at 9 o'clock. You will now be excused to go to your homes." That any juror disregarded this admonition of the court is not suggested by the record. The sufficiency of the evidence to sustain the judgment is not questioned in this court. The conduct of the jurors has not been impeached either in the record brought here by defendant or in the argument of counsel. There is nothing to show that any member of the jury was subjected to improper influences during the intermission. For reasons already stated in discussing another assignment of error, the verdict bears evidence that the jury were not prejudiced against defendant or improperly influenced from any source during their separation. In allowing them to separate, neither abuse of discretion on part of the trial court nor prejudice to defendant is shown by the record. It follows that this assignment of error must be overruled.

7. Complaint is also made because a witness for the state was permitted to testify that a brother of defendant exclaimed: "Now give it to him." The information contained the charge that defendant killed Byrnes by striknig and kicking him. The version of the state's witnesses is, in substance, as follows: Defendant was the aggressor. He and Byrnes clinched on a sidewalk 2½ feet above the ground, struggled for a moment, went off the sidewalk together, lit on their feet, and immediately fell with Byrnes underneath. When they were on the ground defendant struck Byrnes in the face two or three times,

got up, and repeatedly kicked him on the head. Dissolution followed within a few minutes. The story of defendant's witnesses is: Byrnes was the assailant. He and defendant clinched on the sidewalk, struggled for an instant, and fell together from the sidewalk to the ground below. Immediately defendant struck Byrnes two or three times in the face, and got up, but did not kick him. Defendant's explanation is that Byrnes was killed by striking the ground in his fall from the sidewalk. An eyewitness for the state was permitted to testify that defendant's brother, who was only a few feet away, exclaimed, after defendant struck Byrnes: "Now give it to him!" The admission of this testimony is the error assigned. Regardless of its admissibility, it does not require a reversal. Defendant was a witness in his own behalf, and testified on direct examination that he struck Byrnes two or three times when the latter was on the ground. Having admitted that he thus struck the blows, he was not prejudiced by the proof of his brother's direction.

8. Another argument is directed to the proposition that the trial court erred in permitting a physician to testify on behalf of the state to facts obtained by him when in the employ of defendant in a professional and confidential capacity. After the homicide defendant employed the physician to examine the body of the deceased person and to report the result. Later the same physician was selected by the state to make a *post mortem* examination. He performed the service, and testified at the trial to the conditions disclosed. Defendant contends that knowledge of all of the facts to which the physician testified was obtained as a result of confidential communications properly entrusted to him by defendant. The point is that the physician's testimony was admitted in evidence in violation of the following provision of statute: "No practicing attorney, counselor, physician, surgeon, minister of the gospel, or priest of any denomination shall be allowed, in giving testimony, to disclose any confidential communication, properly entrusted to him in his professional ca-

pacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline." Code, sec. 333. As applied to physicians, the purpose of the statute is to prevent the improper disclosure of secrets or facts learned by means of the confidential relation. The relation protected is that of physician and patient. Outside of that relation the parties are on an equal footing, where the rule of the statute and the reasons of public policy on which it is founded do not follow. In considering the statute this court, in an opinion by Chief Justice NORVAL, said: "The mere fact that a communication is made to a person who is a lawyer, a doctor or a priest, does not of itself make such communication privileged. To have that effect, it must have been made in confidence of the relation and under such circumstances as to imply that it should forever remain a secret in the breast of the confidential adviser." *Hills v. State,* 61 Neb. 589, 595. The same view is expressed in *Sovereign Camp, W. O. W., v. Grandon,* 64 Neb. 39. In the present case the physician was not employed to examine or treat defendant or any member of his family. The relation of physician and patient did not exist between them. The exhumed body contained no secrets which could be kept within the exclusive knowledge of defendant and the physician. The means of ascertaining the condition of the body was equally within the reach of defendant and the state. The court was entitled to know the truth. In addition, there is testimony showing the physician stated to defendant at the time of his employment that he would make his statement to the county attorney also. The purpose of the statute is to protect patients from objectionable disclosures, but it was never intended to shield defendant in his present position. Consequently the ruling of the trial court in admitting the physician's testimony must be approved.

9. Referring to Byrnes, the victim of the homicide, a witness for defendant was asked: "When under the influence of liquor, what was his disposition as to being

quarrelsome or otherwise?" Complaint is made because the witness was not permitted to answer this question. The ruling of the trial court was justified by the fact that there was no proof that Byrnes was under the influence of liquor. Other rulings on evidence are challenged, but do not contain reversible error. Some of them were correct. Others were not prejudicial, if erroneous. Defendant admitted on the witness stand that he struck Byrnes two or three times. The jury, however, did not find him guilty of any crime containing the element of malice, and he was not prejudiced by rulings relating to evidence on that subject.

10. A lengthy instruction containing the following language is criticised as erroneous: "You may also deduce the purpose or design of the defendant from his declarations, if any he made, at the time of the killing of said Byrnes, but in considering the declarations of the defendant, made at the time of the alleged killing of Byrnes detailed by the witnesses on the stand, you should sift the evidence carefully, and critically examine the circumstances under which they were uttered and heard and detailed. The declarations made by the defendant at the time, when aggravated by passion and excitement, if they were, may or may not have much weight attached to them." Defendant criticises this instruction because he made no declarations, and because it submitted to the jury an issue on which there was no evidence. The criticism is unmerited. A witness, after describing defendant's acts of violence, testified to his having said: "You got enough?" or, "Have you got enough?" The instruction was favorable to defendant, and its tendency was to caution the jury against giving too much weight to such declarations.

Other instructions are also criticised, but attention has not been directed to any prejudicial error therein. All questions presented by the brief of defendant or argued by his counsel at the bar have been considered. The result is that he has been unable to point out any error requiring a reversal, and the judgment against him is

AFFIRMED.