### FRANK HALLETT V. STATE OF NEBRASKA.

FILED NOVEMBER 25, 1922.   No. 22809.

1. **Assault and Battery:** INTENT. The intent, with which an assault is made may be inferred from the facts and circumstances surrounding the performance of the act.

2. ———: "GREAT BODILY INJURY:" QUESTION FOR JURY. The term "great bodily injury," as employed in the Criminal Code, is not susceptible of a precise definition, but implies an injury of a graver and more serious character than an ordinary battery; and whether a particular case is within the meaning of the statute is generally a question of fact for the jury.

3. ———: ———: ———. Evidence examined, and found sufficient to justify the trial court in permitting the jury to determine therefrom whether or not the defendant's assault was made with intent to inflict great bodily injury.

4. **Criminal Law:** NAMES OF WITNESSES. The object of the statute providing that the names of the state's witnesses must be indorsed on the information is to protect the defendant by apprising him of the identity of those who are to testify against him; and, if this end is fully attained, the defendant cannot complain because the witness is designated by his title, Doctor, instead of by his given name or initials.

ERROR to the district court for Boyd county: ROBERT R. DICKSON, JUDGE. *Affirmed.*

*W. T. Wills* and *Josiah Coombs,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *Jackson B. Chase, contra.*

Heard before MORRISSEY, C. J., LETTON, ALDRICH, DAY and DEAN, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

In this case the plaintiff in error, defendant below, was convicted of an assault with intent to do great bodily injury. He attacked Mr. Cliff Penn, a school-teacher and superintendent of schools of the town of Lynch, as they met upon the village street, knocked him down with his fist and struck him again while down, inflicting upon him by his blows and by the described fall a deep two-inch cut above his eye, a contusion on the back of his head, a cut on the inside of his cheek, and several minor abrasions on his face. .

The evidence is conclusive that the teacher made no hostile demonstration toward the defendant, and that he offered no resistance. He was completely knocked out, lost a good deal of blood, fainted at the end of his surgical treatment, and was carried to his home, where he was. laid up for nearly ten days. For some additional time he experienced a difficulty of locomotion, due to dizziness. There was medical testimony to the effect that permanent partial disability might result from his rough-handling.

But the question raised here, as well as in the court below, is this: Did the defendant do what he did with intent to inflict great bodily injury, that is to say, with intent to inflict an injury of graver and more serious character than an ordinary battery? He swears positively that he had no such intent. Was the evidence sufficient to enable the jury to properly find therefrom that he had? If this question be answered in the negative, the verdict ought not to stand, however aggravated the assault. .

Without much doubt, defendant bore the superintendent some ill will, as prominent in the denial of school privileges to his daughter. The school board had made a ruling that the latter was not entitled to schooling in Lynch until tuition should be paid for her, and Mr. Penn, as superintendent, was attempting to enforce such ruling by refusing to permit her to recite with the other pupils. Defendant contended that he had returned to

Lynch to live, and that his daughter had a right to the benefit of public school without the payment of any tuition. He had arranged with a member of the board for a hearing at its next session, and, meeting Mr. Penn upon the street, he accosted him and sought to discuss the matter with him. Penn replied that he did not want to talk to him, and he struck him. Such was the testimony of the defendant. On the other hand, Mr. Penn testifies that no word whatever passed between them; that he was reading a letter as he passed along, and did not even see his assailant, or know that he was at hand, till he came back to consciousness under the ministrations of his physician.

Though his irritation was ever so real, it cannot, of course, afford the defendant any justification for his violence. His daughter may have been humiliated. She probably was. The ostracisms of the school-room, so often inflicted for the purpose of compelling parents, are frequently peculiarly distressing to the child. But, even if she had been insulted or abused, her father would have been without any valid excuse for his resort to the code of the club, claw and fist. His provocation, if any he had, is important mainly as disclosing a motive that might beget the intent charged. In other words, it only helps to prove that he had in contemplation all that he accomplished in his brutal assault. Without a fixed purpose to beat his victim beyond the bounds of mere battery, it would seem that the success of his first paralyzing blow would have appeased his anger. But he struck him again, and perhaps again, as he struggled, knocked-out and bleeding, upon the walk, striking so hard in one instance that his fist, missing or glancing and landing on the walk, was badly broken. Moreover, the teacher was undersized, five feet five and one-half inches in height, and a cripple. Further than this, there was testimony, denied and not at all conclusive, it is true, that defendant had been looking and waiting for Mr. Penn in the vicinity of the schoolhouse.

In the Nebraska cases, more particularly in *Murphey v. State,* 43 Neb. 34, and *Lambert v. State,* 80 Neb. 562, it is held that whether the defendant intended to inflict great bodily injury, which this court defined as an injury of graver and more serious character than a battery, was a question for the jury. There was breaking of bones in those cases, but nothing to indicate that the attack was more savage and unsparing. Indeed, the unsparing and follow-through quality of the assaults in those cases finds a counterpart in this, and argues not only deliberation, but determination to injure to a very serious degree. Futhermore, it was held in such case that the intent of the assailant was proper to be inferred, in the judgment of the jury, from the facts and surrounding circumstances of the case.

These considerations lead us to the opinion that the case was for the jury, and that the verdict and judgment cannot be disturbed if the trial was fair and if the issue was properly submitted.

The contention of the defendant that the court erred in permitting Dr. Kirz to testify, his name being indorsed on the information as Dr. Kirz merely, and not by given name or initial, is not well taken. The object of the statute is that the accused may be apprised of the identity of those who are to testify against him. Doctors are better known by their title than by their Christian names in a country town. Dr. Kirz was well known to the defendant by his professional designation. He had treated his hand at the time it was hurt. The statute will be considered as a protection to the defendant, but not as a weapon against the state. *Ossenkop v. State,* 86 Neb. 539. No prejudice was done to the defendant's rights. No substantial harm was done. No miscarriage of justice resulted. Comp. St. 1922, sec. 10186.

A careful examination of the record discloses no reversible error in the rulings of the court in the reception or rejection of evidence.

We are unable to discover any error in instruction No.

8, given by the district court. The court closely followed the definition of "great bodily injury" adopted in *Murphey v. State, supra,* and approved in *Likens v. State,* 63 Neb. 249, and *Lambert v. State,* 80 Neb. 562, and instructed that whether a particular case is within such definition is a question of fact for the jury. In this, as in its further statement that great bodily injury does not necessarily mean permanent injury, it is supported by the express language of the above cases. The instruction seems quite above reproach.

Likewise instruction No. 9 is an approved one, telling the jury that the proof of intent on the part of the defendant is indispensable to a conviction. It properly directs that this may be inferred from words and acts and surrounding facts and circumstances. Taken in connection with instruction No. 12 (and all the instructions must be considered together), it correctly stated the law and abundantly safeguarded the defendant.

Instruction No. 10 is somewhat involved in its language, but it is not susceptible of a construction under which it might be said to misstate the law, or to be injurious to the defendant. The first part, in which it is stated that it is not essential to a conviction that the accused should have intended the precise injury that followed the assault, is in the familiar language of the *Murphey* case, while the latter part says, in substance, that it is enough if it be shown beyond reasonable doubt by the circumstances that great bodily injury was contemplated. Taken with the preceding instruction, which directed that all the evidence bearing on intent should be considered, it is not objectionable, and could not have been misleading.

The same may be said of instruction No. 11, which is assailed as telling the jury that the assault was deliberate and inexcusable. That this is not the case is obvious from a reading of the instruction. The instruction is as follows: "No wrong, however serious to the person of another, will alone warrant a conviction for an assault

with intent to inflict great bodily injury; but, when the injury proved is the natural and necessary consequence of the deliberate and inexcusable act of the accused, the presumption is that it was the result contemplated by him in the commission of the assault." This is a correct statement of the law. *Murphey v. State,* 43 Neb. 34. Nor can the defendant complain of it, particularly since he offered no instruction presenting the alternative, and none specifically directing its application.

The case was well tried and submitted, and the judgment of the district court should stand.

AFFIRMED.