STATE OF NEBRASKA, APPELLEE, V. RICHARD DEAN JACKSON, APPELLANT.

408 N.W.2d 720

Filed July 2, 1987. No. 86-667.

844

Charles D. Hahn, for appellant.

Robert M. Spire, Attorney General, and Lisa D. Martin-Price, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

As the result of a jury trial in the district court for Richardson County, Richard Dean Jackson was found guilty of attempted second degree sexual assault, was later determined to be a habitual criminal, and, thereafter, was sentenced to imprisonment in the Nebraska Penal and Correctional Complex for a term of 20 to 60 years. We affirm.

## BASIS OF CRIMINAL CHARGE

The victim, 59 years old and characterized at trial as "slow or semi-retarded," had grown up in the Beatrice State Home. On the evening in question, Jackson called upon the victim, and, seated in the living room of the victim's apartment, the pair watched television. Throughout the course of viewing television, Jackson frequently left the living room to use the bathroom in the victim's apartment. After his last trip to the bathroom, Jackson, stark naked, returned to the living room and asked the victim whether he "could have a little." The victim, realizing Jackson was requesting sexual intercourse, declined and told Jackson to put on his clothes and "get out" of

the victim's apartment. Jackson repeated his request "for a little," and, again, the victim refused. At that point, Jackson, still naked, approached the victim, seated on the couch, and asked to touch her breasts. Jackson sat down next to the victim, but was unable to touch the victim's breasts, genital area, or any other intimate area of the victim's body because the victim was "fighting him." Sometime during the struggle with the victim, Jackson ejaculated on the victim's pant leg. When the victim started screaming, escaped from Jackson's grasp, and ran to the front door of her apartment, nude Jackson followed the frightened victim, put his hand over her mouth, and said: "Shut up, or I'll kill you." With his hand covering the victim's mouth and her arm pulled behind the victim's back, Jackson dragged the victim back to the couch. After the victim had quieted, Jackson "apologized," put on his clothes, and left the apartment.

## THE INFORMATION

The State's information charged Jackson with an attempt, see Neb. Rev. Stat. § 28-201 (Reissue 1985) (criminal attempt), to commit sexual assault in the first degree, see Neb. Rev. Stat. § 28-319(1) (Reissue 1985). The information also contained an allegation that Jackson was a habitual criminal according to the provisions of Neb. Rev. Stat. § 29-2221 (Reissue 1985) ("habitual criminal"; defined). Attempted first degree sexual assault is a Class III felony, punishable by imprisonment of 1 to 20 years, a fine of $25,000, or both such imprisonment and fine. See, §§ 28-201(4)(b) and 28-319(2).

## JACKSON'S EVIDENCE AT TRIAL

Jackson, 30 years of age at the time of trial, testified and, on direct examination, acknowledged that he was "Ricky Dean Jackson" and had been previously convicted of three felonies. Jackson further testified that he was naked when he approached the victim in her apartment and asked for sex with her. Jackson, however, denied that he, by use of force, attempted to have sex with the victim and, further, denied that he attempted to touch the victim's genital area or other "intimate parts" of the victim's body or attempted in any manner to "penetrate" the victim's body. Jackson also testified that he "might have" ejaculated on the victim's pant leg. (Other

evidence substantiated that Jackson had, in fact, ejaculated on the victim's pant leg.) While admitting that he had grabbed the victim, covered her mouth, and dragged the frightened victim to the couch, Jackson also acknowledged that it was "possible" that he told the victim to "Shut up, or I'll kill you."

## INSTRUCTIONS

Jackson requested, and the court gave, instructions allowing the jury to find Jackson guilty of attempted sexual assault in the first, second, or third degree, or to find Jackson not guilty. The jury found Jackson guilty of attempted sexual assault in the second degree. The court entered judgment on the verdict and ordered a hearing to determine whether Jackson was a habitual criminal and punishable by an enhanced penalty as a habitual criminal.

## ENHANCEMENT PROCEEDINGS

As background for the enhancement hearing, all pleadings and filings in the proceedings against Jackson were captioned, "State of Nebraska, Plaintiff, vs. Richard Dean Jackson, Defendant." Jackson did not file a plea in abatement that proceedings were brought against him in a name other than his true name. See Neb. Rev. Stat. § 29-1813 (Reissue 1985) (misnomer; plea in abatement). In response to the county attorney's foundational questions during Jackson's trial, the victim, when asked whether "Ricky Jackson" was in court, pointed to the counsel table, whereupon the record reflected that the victim had "identified the defendant." Jackson, while testifying on direct examination, identified himself as "Ricky Dean Jackson." The verdict bore the same caption as all other filings in the proceedings against Jackson. After the verdict was returned and filed, the court, at entry of judgment in the presence of Jackson, stated: "And the Court, in accordance with the jury's verdict, finds and adjudges the defendant, Richard Dean Jackson, guilty of [attempted] sexual assault in the second degree." At commencement of the enhancement hearing for application of the habitual criminal penalty, the court directed: "The record should reflect that the defendant is present in court, Richard Dean Jackson, with his attorney . . . ."

At the enhancement hearing, the State introduced authenticated copies of the records concerning Jackson's

convictions in 1974, 1975, and 1979, as well as commitments to prison for not less than 1 year as a result of each of those convictions.

Regarding Jackson's conviction in 1974, the mittimus recited that *"Rickard* D. Jackson" (emphasis supplied) was found guilty of forgery and was sentenced to 1 year in the Nebraska Penal and Correctional Complex, with credit given for 2 days in custody while awaiting trial. The sheriff's certificate and return on the mittimus and the receipt by the warden at the Nebraska Penal and Correctional Complex reflect that on October 2, 1974, *"Richard* D. Jackson" (emphasis supplied) was delivered into custody at the penal complex.

The mittimus for Jackson's 1975 conviction reflected that the initial information, charging "Ricky D. Jackson" with three counts of sexual assault in the second degree, was amended to a single count of sexual assault in the second degree, on which "Ricky D. Jackson" was convicted and sentenced to 1 year in the Nebraska Penal and Correctional Complex, with credit given for 102 days in "jail confinement." On the mittimus, the sheriff's certificate and return, as well as the warden's receipt, recited that Ricky D. Jackson was delivered to the Nebraska Penal and Correctional Complex on February 10, 1976.

The mittimus for Jackson's third prior conviction related to the offense of sexual assault in the first degree. Although Jackson was initially convicted in 1977 and an examination was ordered to determine whether Jackson was a mentally disordered sex offender, see Neb. Rev. Stat. §§ 29-2911 et seq. (Reissue 1985), on Jackson's motion, his 1977 conviction was set aside by the trial court. On retrial in 1979, Jackson was convicted of sexual assault in the first degree. According to the mittimus for that conviction, "Ricky Jackson" was sentenced to not less than 8 years and 4 months nor more than 15 years in the Nebraska Penal and Correctional Complex with credit for "2 years presentence jail time." The return and receipt on the mittimus state that "Ricky Jackson" was delivered into the custody of the Department of Correctional Services of the State of Nebraska on August 8, 1979.

After the State had offered the foregoing documentary evidence concerning Jackson's prior convictions, Jackson

objected, claiming that the State had failed to establish that the "Richard Dean Jackson" named in the information and found guilty by the Richardson County jury was the same person designated in the records for the convictions in 1974, 1975, and 1979. When Jackson moved to dismiss the enhancement proceedings, the court adjourned the enhancement proceedings for a week. On resumption of the enhancement hearing, and over Jackson's objection, the State called witnesses whose names were not endorsed on the information filed against Jackson. One such witness was a fingerprint examiner for the Nebraska State Patrol, who testified that the fingerprints for "Richard Dean Jackson" were identical to the fingerprints for "Ricky D. Jackson," convicted in 1975, and "Ricky Jackson," convicted in 1979. The State also called three officers of the Lincoln Police Department, who were the arresting officers concerning crimes charged against Jackson in 1975 and 1979. Each of the officers identified Jackson as the person whom he had arrested and who was convicted as shown by the court records offered at the enhancement hearing.

The court found Jackson to be the same person who had been convicted as reflected in the documentary evidence presented by the State and determined that Jackson was a habitual criminal within the meaning of § 29-2221(1). After reviewing evaluative reports rendered pursuant to the court's ordered examination to ascertain whether Jackson was a mentally disordered sex offender, the court determined that Jackson was a mentally disordered sex offender whose disorder is nontreatable, see § 29-2914, and sentenced Jackson as a habitual criminal, that is, to imprisonment for a term not less than 20 years nor more than 60 years in the Nebraska Penal and Correctional Complex, as authorized by § 29-2221(1).

## ASSIGNMENTS OF ERROR

In his appeal, Jackson assigns the following errors: (1) Evidence is insufficient to sustain his conviction, which is contrary to law; (2) the trial court committed reversible error by allowing witnesses whose names were not endorsed on the information to testify at the enhancement hearing; (3) the trial court erred in finding that Jackson is a habitual criminal; (4) the trial court committed error in its instruction on a lesser offense

concerning the crime charged; and (5) the sentence imposed is excessive.

## STATUTES

*Criminal Attempt*

Section 28-201 provides in part:

(1) A person shall be guilty of an attempt to commit a crime if he:

(a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

(b) Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime.

(2) When causing a particular result is an element of the crime, a person shall be guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, he intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

*Sexual Assault: Degrees*

Section 28-319 provides in part:

(1) Any person who subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception, (b) knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct . . . is guilty of sexual assault in the first degree.

(2) Sexual assault in the first degree is a Class II felony.

Neb. Rev. Stat. § 28-320 (Reissue 1985) provides in part:

(1) Any person who subjects another person to sexual contact and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception, or (b) knew or should have known that the victim was physically

or mentally incapable of resisting or appraising the nature of his or her conduct is guilty of sexual assault in either the second degree or third degree.

(2) Sexual assault shall be in the second degree . . . if the actor shall have caused serious personal injury to the victim.

*Statutory Definitions*

As a definitional statute pertaining to sexual assaults, Neb. Rev. Stat. § 28-318 (Reissue 1985) provides in part:

(4) Serious personal injury shall mean great bodily injury or disfigurement, extreme mental anguish or mental trauma, pregnancy, disease, or loss or impairment of a sexual or reproductive organ;

(5) Sexual contact shall mean the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Sexual contact shall also mean the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party;

(6) Sexual penetration shall mean sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration shall not require emission of semen . . . .

Jackson contends his conviction must be set aside because the evidence does not support the jury's findings concerning the elements of attempted sexual assault in the second degree (§ 28-320(1) and (2)). Jackson argues there is no evidence that he made any effort to contact the sexual or intimate areas of his victim's body. Also, according to Jackson, the only force used was an effort to quiet the victim and not a means to achieve any

sexual act or contact with the victim. Therefore, Jackson argues, there is the absence of force necessary to sustain a conviction for sexual assault in the second degree (§ 28-320(1)(a)) and the absence of serious personal injury sustained by his victim, which injury is an element required in the offense of sexual assault in the second degree (§ 28-320(2)). Jackson further argues that the evidence fails to establish that his victim was physically or mentally incapable of resisting or appraising the nature of Jackson's conduct toward the victim (§ 28-320(1)(b)).

To sustain a conviction for the offense of criminal attempt in violation of § 28-201(1)(a) or (b), evidence must establish beyond a reasonable doubt that the defendant intentionally engaged in conduct which (1) would constitute a particular crime, if the attendant circumstances were as the defendant believes such circumstances to be, or (2) under the circumstances as the defendant believes such circumstances to be, constitutes a substantial step in a course of conduct intended to culminate in the defendant's commission of the crime. See, *State v. Swoopes*, 223 Neb. 914, 395 N.W.2d 500 (1986); *State v. Benzel*, 220 Neb. 466, 370 N.W.2d 501 (1985); *State v. Sodders*, 208 Neb. 504, 304 N.W.2d 62 (1981).

Whether a defendant's conduct constituted a substantial step toward commission of a particular crime is, generally, a question for the trier of fact. *State v. Sodders, supra.*

To commit the crime of attempted sexual assault in any degree, actual sexual penetration or sexual contact between the victim and the defendant is not required. *State v. Swoopes, supra.*

Before we consider whether the evidence is sufficient to sustain Jackson's conviction, we must dispose of an issue implicit in Jackson's claim that his conviction is "contrary to law." The information charged Jackson with attempted sexual assault in the first degree. The court instructed not only on the offense of attempted sexual assault in the first degree but, also, at Jackson's request, instructed on the offenses of attempted sexual assault in the second and third degrees.

In reference to the question whether attempted sexual assault in the second degree is a lesser-included offense regarding the

crime or offense of attempted sexual assault in the first degree, we note our opinion in *State v. Swoopes, supra*, which recited background for a charge of Swoopes' attempted sexual assault in the first degree. In *Swoopes*, the defendant, wielding a knife, "fondled" his female victim's breast during a struggle in which the victim sustained a knife laceration, but managed to extricate herself and fled. Although the court instructed the jury on attempted sexual assault in the first degree, Swoopes claimed he was entitled to an instruction on sexual assault in the third degree. See § 28-320(1) and (3). An issue in *State v. Swoopes, supra*, was the relationship between criminal attempt and another crime, insofar as such other crime may be a lesser-included offense concerning the offense of criminal attempt. In *Swoopes*, we stated:

> Because an attempted crime as defined by § 28-201 may be committed without the crime itself being committed, no offense can be a lesser-included offense of an *attempted* crime prosecuted under § 28-201. There are no lesser-included offenses to § 28-201, and the district court was correct in refusing to instruct the jury on a lesser-included offense.

(Emphasis in original.) 223 Neb. at 922, 395 N.W.2d at 506.

This court has recognized that in a prosecution for sexual assault in the first degree, where there is a factual dispute concerning an element of first degree sexual assault, but there is evidence which reasonably may establish a sexual assault in a degree less than first, a defendant is entitled to an instruction on the lesser degree of sexual assault as a lesser-included offense concerning the charge of sexual assault in the first degree.

For instance, in *State v. Tamburano*, 201 Neb. 703, 705-07, 271 N.W.2d 472, 474-75 (1978), this court stated:

> All parties concede that the offense of sexual assault, second degree, is a lesser-included offense of sexual assault, first degree. . . .
>
> . . . Second degree sexual assault requires only sexual contact as opposed to sexual penetration. . . .
>
> . . . .
>
> . . . "The test which must be applied in determining whether or not to submit a lesser-included offense is

whether there is evidence which produces a rational basis for a verdict acquitting defendant of the offense charged and convicting him of the lesser offense." [Citing and quoting from *State v. McDonald*, 312 Minn. 320, 251 N.W.2d 705 (1977).] . . . As for the type of evidence which would require the lesser charge . . . "The controverted evidence to dispute the proof of the element separating the crime charged from the lesser offense can be supplied by inference as well as by direct testimony." [Citing and quoting from Barnett, *The Lesser-Included Offense Doctrine*, 5 Conn. L. Rev. 255 (1972).]

Acknowledging that there must be some basis in the evidence to rebut the greater charge as a prerequisite to an instruction on a lesser offense, we then observed in *Tamburano*:

Evidence which requires the submission of a lesser-included offense is necessarily left to a case-by-case basis. It is sufficient to say that that evidence does not rise to that required level by speculating that an essential element uncontroverted in the evidence may be disbelieved by the jury.

201 Neb. at 708, 271 N.W.2d at 475.

A similar conclusion was reached in *State v. Beasley*, 214 Neb. 918, 336 N.W.2d 601 (1983), where the only evidence established defendant's forcible sexual penetration of his victim, although the defendant denied such penetration and asserted he was not at the victim's home when the sexual assault occurred. Beasley claimed error in the trial court's refusing to instruct on sexual assault in the second and third degrees, but we expressed:

These lesser offenses do not require penetration as an element of the offense. Rather, only "sexual contact" is required. Neb. Rev. Stat. § 28-320 (Reissue 1979). . . .

. . . .

Here, the evidence did not rise to the level of proof required by *Tamburano*. In that case we held that if, under a "different but reasonable" view, the evidence would be sufficient to establish guilt of the lesser offense and leave a reasonable doubt as to some element included in the greater offense but not the lesser, the jury should be

instructed on the lesser offense. The defense here was an alibi, and the evidence relied upon by the defendant did not tend to support a view that sexual contact occurred but a reasonable doubt existed as to penetration.
*Id.* at 922-23, 336 N.W.2d at 604. See, also, *State v. Schwartz,* 219 Neb. 833, 366 N.W.2d 766 (1985) (fact of sexual assault was undisputed, but dispute existed whether the victim had sustained a serious personal injury; held, under the circumstances, sexual assault in the third degree was a lesser-included offense regarding sexual assault in the second degree).

The test for determining whether a lesser-included offense exists in this jurisdiction is that a lesser-included offense is one which is necessarily established by proof of the greater offense. To be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. *State v. Miller,* 215 Neb. 145, 337 N.W.2d 424 (1983); *State v. Ebert,* 212 Neb. 629, 324 N.W.2d 812 (1982); *State v. Lovelace,* 212 Neb. 356, 322 N.W.2d 673 (1982).
*State v. White,* 217 Neb. 783, 785, 351 N.W.2d 83, 85 (1984).

Recently, in *State v. Pribil,* 224 Neb. 28, 32, 395 N.W.2d 543, 547 (1986), we noted:

"When some of the elements of the crime charged in the information, without the addition of any element irrelevant to the original crime charged, *may* constitute another crime or crimes, such other crime or crimes are included within the crime charged." [Emphasis in original.] [Citing and quoting from *State v. McClarity,* 180 Neb. 246, 142 N.W.2d 152 (1966).]

In view of the definitions or characterizations in § 28-318 pertaining to sexual assault, there may be sexual contact without sexual penetration, but, ordinarily, sexual penetration does not exist without some form of sexual contact. Thus, sexual assault in the second degree (sexual contact), under appropriate circumstances, may be a lesser-included offense concerning a charge of sexual assault in the first degree (sexual penetration).

In the present case the question becomes: As a result of the

charge of an attempt to commit a sexual assault in the first degree, may an attempt to commit a sexual assault in the second degree be a lesser-included offense concerning the attempted first degree sexual assault? Under the circumstances, the answer to the immediately preceding question is in the affirmative.

Bearing in mind our previous statements in this opinion concerning criminal sexual assaults, and depending on the context in which an attempted sexual assault occurs, a substantial step in a course of conduct intended to culminate in a sexual assault in the first degree (sexual penetration) may include a substantial step in a course of conduct intended to culminate in achievement of sexual contact as well, that is, commission of a sexual assault in the second degree. Consequently, within the offense of "criminal attempt," § 28-201, an attempt to commit a particular crime may also include an attempt to commit a lesser-included offense in reference to the designated crime alleged to have been attempted. However, in *State v. Swoopes*, 223 Neb. 914, 922, 395 N.W.2d 500, 506 (1986), we stated: "[N]o offense can be a lesser-included offense of an *attempted* crime prosecuted under § 28-201." (Emphasis in original.) To the extent that *State v. Swoopes, supra*, indicates or holds that an attempt to commit a sexual assault in a degree less than first degree cannot be a lesser-included offense in a prosecution for an attempt to commit a sexual assault in the first degree, *Swoopes* is disapproved and overruled.

Thus, the information charging Jackson with attempted sexual assault in the first degree permitted the court to submit to the jury resolution of the charge concerning attempted sexual assault, including the offenses of attempted sexual assault in the first and second degrees, and the verdict, if sustained by sufficient evidence, is not contrary to law.

## SUFFICIENCY OF EVIDENCE

In view of the evidence, commonsense dictated that the jury could reasonably infer that Jackson intentionally engaged in conduct which constituted a substantial step toward commission of a sexual assault. Nude Jackson, having ejaculated on his victim, persisted in very forcefully grappling

with his victim, who was threatened with homicide. At this point, no further reiteration of the facts is necessary in considering whether Jackson took a substantial step toward forcible sexual contact with his victim. Although Jackson asserts in his brief at 8 that "[t]he only threat of force . . . was to quiet [his victim] . . . not to have sex with her," tranquility might have been more readily restored if Jackson had simply put on his trousers and, without further adieu, left the apartment.

> In determining whether evidence is sufficient to sustain a conviction in a jury trial, the Supreme Court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury, which are within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict.

*State v. Brown, ante* p. 418, 428, 405 N.W.2d 600, 606 (1987). See, also, *State v. Clancy*, 224 Neb. 492, 398 N.W.2d 710 (1987); *State v. Schott*, 222 Neb. 456, 384 N.W.2d 620 (1986).

> On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.

*State v. Robertson*, 223 Neb. 825, 830, 394 N.W.2d 635, 638 (1986). We have also held that "after a jury has considered all the evidence and returned a verdict of guilty, that verdict may not, as a matter of law, be set aside on appeal for insufficiency of evidence, if the evidence sustains some rational theory of guilt." *State v. Evans*, 215 Neb. 433, 443, 338 N.W.2d 788, 794 (1983).

The evidence is sufficient to sustain a jury finding that Jackson attempted a forcible sexual assault in the second degree. The sexual contact condemned by § 28-320(1) may exist by force on the victim *or* by the victim's incapability, physically or mentally, in resisting or appraising the nature of the conduct involved in the sexual assault. In view of the alternative violations of § 28-320(1), sufficiency of evidence for Jackson's

conviction of attempted forcible sexual assault in the second degree, § 28-320(1)(a), makes it unnecessary to answer Jackson's argument regarding his victim's physical or mental capability as an element for conviction of attempted sexual assault in violation of § 28-320(1)(b).

## ENDORSEMENT OF WITNESSES

Jackson next contends that the State must endorse on the information the name of any witness who will testify at the enhancement hearing to determine applicability of the habitual criminal penalty. Jackson points to § 29-2221(2), which, in part, provides: "Where punishment of an accused as an habitual criminal is sought, the facts with reference thereto must be charged in the indictment or information which contains the charge of the felony upon which the accused is prosecuted . . . ."

In the information filed against Jackson, there is the allegation that Jackson committed a felony in the State of Nebraska and had "been twice previously convicted of a crime, sentenced and committed to prison, in this state or any other state, or by United States for terms not less than one year each be deemed to be an habitual criminal."

Jackson then refers to Neb. Rev. Stat. § 29-1602 (Reissue 1985), which requires that the prosecuting attorney shall endorse on the information the names of the witnesses known to such prosecutor at the time the information is filed.

As noted in *State v. Golgert*, 223 Neb. 950, 953, 395 N.W.2d 520, 523 (1986), the purpose of an information, § 29-1602, is to " ' "inform the accused, with reasonable certainty, of the charge being made against him in order that he may prepare his defense thereto and also be able to plead the judgment rendered thereon as a bar to a later prosecution for the same offense." ' " (Quoting *State v. McGee*, 221 Neb. 557, 378 N.W.2d 674 (1985).)

Endorsement of witnesses' names on the information is required to provide a defendant with the identity of persons who may testify against the defendant and to afford the defendant an opportunity to investigate concerning such witnesses, if necessary to prepare a defense at trial. See, *State v. Ellis*, 223 Neb. 779, 393 N.W.2d 719 (1986); *State v. Keith*, 189

Neb. 536, 203 N.W.2d 500 (1973); *Hallett v. State*, 109 Neb. 311, 190 N.W. 862 (1922); *Ossenkop v. State*, 86 Neb. 539, 126 N.W. 72 (1910).

The habitual criminal penalty, however, is not a separate criminal offense, but is an enhanced penalty permissible to punish repetitive criminal conduct after a defendant's conviction on a principal charge and a subsequent finding of the defendant's habitual criminal status. See, *State v. Luna*, 211 Neb. 630, 319 N.W.2d 737 (1982); *State v. Rolling*, 209 Neb. 243, 307 N.W.2d 123 (1981); *State v. Sheldon*, 179 Neb. 377, 138 N.W.2d 428 (1965); *Gamron v. Jones*, 148 Neb. 645, 28 N.W.2d 403 (1947); *Rains v. State*, 142 Neb. 284, 5 N.W.2d 887 (1942).

In a sentence hearing, a court, generally, has broad discretion concerning the source of information and the type of information to be considered. See, *United States v. Tucker*, 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972); *Williams v. New York*, 337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949); *United States ex rel. Welch v. Lane*, 738 F.2d 863 (7th Cir. 1984). In *State v. Goodpasture*, 215 Neb. 341, 345, 338 N.W.2d 446, 449 (1983), this court expressed that, in gaining information for the purpose of sentencing, a sentencing court " 'may consider reports of probation officers, police reports, affidavits, and other information including his own observations of the defendant. A presentence investigation has nothing to do with the issue of guilt. . . .' " (Citing and quoting from *State v. Rose*, 183 Neb. 809, 164 N.W.2d 646 (1969).) See, also, *State v. Dillon*, 222 Neb. 131, 382 N.W.2d 353 (1986). In addition, the Nebraska Evidence Rules do not apply at a sentence hearing. *State v. Dillon, supra.* See Neb. Evid. R. 1101(4) (Neb. Rev. Stat. § 27-1101(4) (Reissue 1985)). As noted in *State v. Goodpasture, supra* at 345, 338 N.W.2d at 449: " 'The latitude allowed a sentencing judge at a presentence hearing to determine the nature and length of punishment, *other than in recidivist cases*, is almost without limitation as long as it is relevant to the issue.' " (Emphasis supplied.) See, also, *State v. Rose, supra.*

However, as the U.S. Supreme Court expressed in *Gardner v. Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393

(1977): "[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause." In *Specht v. Patterson*, 386 U.S. 605, 87 S. Ct. 1209, 18 L. Ed. 2d 326 (1967), the U.S. Supreme Court, examining Colorado's Sex Offenders Act, which authorized sentencing a habitual sex offender to an indeterminate sentence from 1 day to life in prison, concluded:

> The case is not unlike those under recidivist statutes where an habitual criminal issue is "a distinct issue" . . . on which a defendant "must receive reasonable notice and an opportunity to be heard." . . . Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own.

386 U.S. at 610. See, also, *Oyler v. Boles*, 368 U.S. 448, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962); *Chandler v. Fretag*, 348 U.S. 3, 75 S. Ct. 1, 99 L. Ed. 4 (1954); *Government of Virgin Islands v. George*, 741 F.2d 643 (3d Cir. 1984); A. Campbell, Law of Sentencing §§ 67, 85 (1978).

Regarding a hearing to determine whether a convicted defendant is a habitual criminal as defined in § 29-2221, we hold that the defendant is entitled to be present with counsel, have an opportunity to be heard at such hearing, be confronted with witnesses against the defendant, exercise the right of cross-examination, and offer evidence. See *Specht v. Patterson, supra*. We further hold that, while § 29-2221(2) requires that an information contain allegations of facts concerning a defendant's status as a habitual criminal, names of witnesses who may testify at the enhancement hearing are not required to be endorsed on the information charging the defendant with the crime for which a conviction will be the basis to impose the habitual criminal penalty. Cf. *State v. Davis*, 199 Neb. 165, 256 N.W.2d 678 (1977) (for imposition of the habitual criminal penalty, the information on which the defendant is prosecuted must allege that the defendant has twice previously been convicted of a crime, sentenced, and committed to prison for a term not less than 1 year for each such previous conviction).

In the absence of a sentencing court's abuse of discretion, the

sentencing court's procedure utilized for presentation of information at a hearing for imposition of the habitual criminal penalty prescribed by § 29-2221 will be sustained on appeal. See *Waite v. State*, 169 Neb. 113, 98 N.W.2d 688 (1959).

In *State v. Davis*, 224 Neb. 518, 521, 398 N.W.2d 729, 731 (1987), we stated:

> "It is well established that the existence of a prior conviction and the identity of the accused as the person convicted may be shown by any competent evidence, including the oral testimony of the accused and duly authenticated records maintained by the courts or penal and custodial authorities."

(Quoting *State v. Luna*, 211 Neb. 630, 319 N.W.2d 737 (1982).)

> "An authenticated record establishing a prior conviction of a defendant with the same name is prima facie sufficient to establish identity for the purpose of enhancing punishment; and, in the absence of any denial or contradictory evidence, is sufficient to support a finding by the court that the accused has been convicted prior thereto."

*State v. Micek*, 193 Neb. 379, 386, 227 N.W.2d 409, 414 (1975) (citing and quoting from *State v. Roan Eagle*, 182 Neb. 535, 156 N.W.2d 131 (1968)). See, also, *State v. Marlenee*, 199 Neb. 543, 259 N.W.2d 923 (1977).

We note that Jackson did not request a continuance after the previously undisclosed witnesses had testified at the enhancement hearing. Jackson does not claim that his cross-examination of any witness at the enhancement hearing was prevented or restricted as a result of the State's nondisclosure of the identity of any witness before such witness testified at the enhancement hearing. Additionally, Jackson does not claim that the State's nondisclosure of witness identification prevented or restricted Jackson from presentation of any evidence bearing upon applicability of the habitual criminal penalty. Further, Jackson acknowledged at trial that his name was Ricky Dean Jackson and that he had three prior felony convictions. Jackson did not deny that he was the same person named in the court records for the felony convictions, judgments, and commitments in 1974, 1975, and 1979. Also,

Jackson did not offer any evidence to contradict that he was the person named in each commitment to prison for a term not less than 1 year, as reflected in the authenticated copies of the judgments and commitments. There was sufficient and appropriate evidence before the trial court to establish Jackson's identity with the person named in the documentary evidence, that is, the duly authenticated copies of the former judgments and commitments from courts in the State of Nebraska. Such authenticated copies presented a prima facie case of such former judgments and commitments. See Neb. Rev. Stat. § 29-2222 (Reissue 1985). In addition, Neb. Rev. Stat. § 29-2308 (Reissue 1985) provides in part: "No judgment shall be set aside, or new trial granted . . . for error as to any matter of pleading or procedure, if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred."

We find no abuse of discretion by the sentencing court, "no substantial miscarriage of justice," and no prejudice to Jackson by the court's allowing witnesses whose names had not been endorsed on the information to testify at the hearing to determine whether Jackson was a habitual criminal.

## "COMMITTED TO PRISON"

Section 29-2221(1) states in part: "Whoever has been twice convicted of crime, sentenced and committed to prison . . . for terms of not less than one year each, shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal . . . ."

Jackson claims that the district court erred in finding that he was a habitual criminal because Jackson was given credit for 2 days' jail time regarding his first felony conviction and 102 days' jail time toward the 1-year sentence on his second felony conviction. In view of such credit, Jackson argues, his prior convictions for which credit was given were for terms less than 1 year each, and, therefore, he has not been twice sentenced and twice committed to prison for a term of not less than 1 year as prescribed by § 29-2221(1).

In *State v. Nance*, 197 Neb. 257, 248 N.W.2d 339 (1976), we construed language in the habitual criminal statute and stated:

It is a fundamental rule of statutory construction that if

possible a court will try to avoid a construction which leads to absurd, unjust, or unconscionable results. A sensible construction will be placed upon a statute to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent.

*Id*. at 260, 248 N.W.2d at 341.

The statutory reference in § 29-2221(1) is to the "term" to which a defendant is sentenced, not the time or number of days the defendant is actually incarcerated. Therefore, it is the term of a defendant's prior sentences, not time actually served, which controls applicability of the habitual criminal penalty found in § 29-2221. See, *State v. Robinson*, 262 N.W.2d 270 (Iowa 1978); *State v. Houston*, 209 N.W.2d 42 (Iowa 1973). Also, the provisions in § 29-2221(1), namely, that a defendant has been "committed to prison" on conviction for prior crimes, does not necessitate a showing that the defendant was incarcerated for the entire term of a prior sentence but, rather, requires only that the defendant was delivered into the custody and control of the Nebraska Department of Correctional Services for incarceration according to the rules and regulations of that agency. See *People v. Woodruff*, 90 Ill. App. 3d 236, 412 N.E.2d 1171 (1980).

## JURY INSTRUCTIONS

Jackson's brief does not discuss the assignment of error regarding jury instructions, and, therefore, we do not consider that assignment of error. See, Neb. Ct. R. of Prac. 9D(1)d (rev. 1986); *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987); *State v. Bishop*, 224 Neb. 522, 399 N.W.2d 271 (1987).

## EXCESSIVE SENTENCE

In addition to the fact that Jackson is a habitual criminal, Jackson's record of prior convictions is reflected in six pages contained in the presentence report. As Jackson was properly found to be a habitual criminal, his sentence of not less than 20 years nor more than 60 years was within the statutory limits. A sentence imposed within the statutory limits will not be modified on appeal absent an abuse of discretion on the part of the trial court. *State v. Brown, ante* p. 418, 405 N.W.2d 600 (1987); *State v. Clancy*, 224 Neb. 492, 398 N.W.2d 710 (1987).

We find no abuse of discretion by the trial court in the sentence imposed on Jackson.

AFFIRMED.

WHITE, J., concurs in the result.